537 F.2d 780
 4 O.S.H. Cas.(BNA) 1424, 1976-1977 O.S.H.D. ( 20,865
 UNITED STATES STEEL CORPORATION, Petitioner,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION of the
United States of America, and John T. Dunlop,
Secretary of Labor, Respondents.
 No. 75--2095.
 United States Court of Appeals,
Third Circuit.
 Argued April 30, 1976.
Decided June 30, 1976.
 
 W. L. White, Jr., J. T. Carney, Pittsburgh, Pa., for petitioner.
 William J. Kilberg, Sol. of Labor, Benjamin W. Mintz, Associate Sol., Occupational Safety and Health, Michael H. Levin, Counsel for Appellate Litigation, Judith A. Burghardt, Atty., U.S. Dept. of Labor, Washington, D.C., for respondents.
 Before SEITZ, Chief Judge, and ALDISERT and WEIS, Circuit Judges.
 OPINION OF THE COURT
 ALDISERT, Circuit Judge.
 
 
 1
 A United States Steel Corporation (USS) employee lost his balance while connecting a girder on the 109th floor of Chicago's Sears Tower and fell to his death. Shortly after the accident, the Occupational Safety and Health Administration (OSHA) issued a citation and notice of proposed penalty of $900 to USS for Serious Violation of the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 et seq., in failing to provide safety nets for its workers. The Occupational Safety and Health Review Commission (OSHRC) upheld the citation and penalty. The major question presented by this petition to review the OSHRC decision is whether there was substantial evidence in the record to sustain the finding that USS violated 29 C.F.R. 1926.750(b)(1)(ii)[1] and 29 C.F.R. 1926.105(a)[2] by not providing safety nets. We conclude that there was such evidence and, accordingly, deny the petition for review.
 
 
 2
 We accept petitioner's account of the facts and history of the administrative proceedings:
 
 
 3
 On April 14, 1973, two United States Steel ('USS') employees, John DeKlerk and John Porsuczek, known as 'connectors', were working on a horizontal steel girder at the 109th Floor level of Sears Tower Building, at 233 South Wacker Drive in Chicago. It was their function to guide the girders to their intended location and bolt them into place. As part of this process, the connectors walked approximately 30 feet along the 18 inch wide girders to disconnect the slings used by the derrick to hoist the girders from the 106th Floor. After removing one sling, one of the connectors, John DeKlerk, fell from the girder to the nearest solid surface, the 106th Floor, a distance of approximately 35 feet.
 
 
 4
 On April 16, 1973, two compliance officers from the Occupational Safety and Health Administration, Alfred Spenney and Joseph Velasquez, met with William Helm, USS Supervisor of Safety, at the jobsite. On April 17, 1973, the two compliance officers and Mr. Helm made an inspection of the 106th Floor and 109th Floor area.
 
 
 5
 On April 18, 1973, Mr. Velasquez and Morley Brickman, another Occupational Safety and Health Administration compliance officer, met with Howard Baxter, the Superintendent of the Sears Tower jobsite, but did not inspect the 106th Floor.
 
 
 6
 On April 24, 1973, the Occupational Safety and Health Administration issued a citation and notified appellant of a proposed penalty. Appellant filed a notice of contest on June 4, 1973. The Secretary of Labor filed a complaint and appellant thereafter filed its answer. A hearing was held on September 5 and 6, 1973, before the (hearing examiner (ALJ)).
 
 
 7
 (The ALJ) affirmed the citation and proposed penalty. On July 29, 1975, an equally divided two-member Occupational Safety and Health Review Commission upheld (his decision). Petitioner now seeks review of the decision of the Occupational Safety and Health Review Commission.
 
 
 8
 Petitioner's Brief at 3--4.
 
 
 9
 The alleged violation was described in the citation issued USS:
 
 
 10
 Failure to install and maintain safety nets hung with sufficient clearance to prevent contacts with the surface or structure below wherever the potential fall distance exceeds two stories or 25 feet on buildings or structures not adaptable to temporary floors, catch platforms, scaffolds, ladders, safety lines or safety belts. For example: No safety nets, catch platforms or scaffold used for employees working erecting steel on the 109th floor and the clear fall distance was in excess of 25 feet to the next temporary floor on the 106th floor.
 
 
 11
 The strong consensus of witnesses for both sides was that temporary floors, scaffolds, ladders, and catch platforms were not feasible under the circumstances of the job site. (374a--75a). Although opinion concerning the feasibility of safety lines and belts was more diverse, those devices similarly were not employed. The dispute, therefore, narrows itself to a consideration of the safety net requirement.
 
 
 12
 USS asserts a two-pronged defense to the application of the safety net requirement. First, it contends that it was impossible to erect safety nets and still continue to construct the building. Second, it argues that erecting the safety nets would have created hazards to the men erecting the nets and that, on balance, erecting the nets 'would have exposed more employees to more danger more often' than not erecting the nets. (Petitioner's Brief at 8). Both these contentions being factual, our review is limited to a determination whether the findings of the Commission are supported by substantial evidence on the record as a whole. 29 U.S.C. § 660(a); Atlantic & Gulf Stevedores, Inc. v. OSHRC, 534 F.2d 541 (3d Cir., 1976).
 
 
 13
 With regard to the asserted impossibility of continuing construction if nets were erected, the ALJ expressly rejected USS's contention: 'Although it would have been awkward to work with safety nets, (USS's) witnesses did not deny that it was possible to do so.' (375a--76a). USS contests this statement claiming that the witnesses did deny the possibility of continuing construction with safety nets erected, and that the government's witness on this point, Mr. Brickman, was unworthy of credence as against USS's better-qualified witnesses. Even granting that some of USS's witnesses did deny the possibility of continuing with nets, we would not be in a position to override the judgment of the trier of fact on a question of credibility. Altemose Construction Co. v. N.L.R.B., 514 F.2d 8, 13 (3d Cir. 1975). Expert testimony need not be accepted even if uncontradicted. Minnesota Mining and Manufacturing Co. v. Berwick Industries, Inc., 532 F.2d 330 (3d Cir., 1976). Given the interest of the USS witnesses in justifying the company's decision not to erect nets, we are further persuaded that the OSHRC decision on this point must be upheld.
 
 
 14
 USS's second defense is only slightly more troublesome than its first. The argument has an appealing Catch-22 aspect: the hazard to workers can be reduced by erecting safety nets, but erecting the nets is itself hazardous and would result in overall greater hazard than not erecting them. USS claims that the ALJ rejected this argument 'per se' without considering the merits.[3] We disagree.
 
 
 15
 Clearly in these proceedings, USS was not precluded from presenting evidence on the greater hazard defense. Howard Baxter, USS field superintendent, testified: 'It's just the fact that you are putting people up there, more people getting more exposure. It's as simple as that.' (160a). Asked later about the basis of the decision not to use nets, Mr. Baxter responded: 'I did it on the risk or exposure.' (167a). Donald Fink, USS construction superintendent, testified that 'there would be far greater exposure in attempting to use netting.' Booker Pruden, Chairman of the Safety Commission of the National Erection Association, testified that 'to erect a safety net you would have to involve more people in exposing them to accident in handling the net.' (228a).
 
 
 16
 Though the ALJ allowed this line of evidence, USS claims that he ignored it in reaching his decision. Summarizing the testimony, the ALJ said: 'In general, (USS's) witnesses testified that they were aware of the safety problem but, after much discussion, concluded that there would be less danger if the safety nets were not provided. The reason advanced was that the safety net workers would be involved in some danger in the placement of the safety equipment.' (375a). Reading this language, we cannot agree that he ignored the testimony. Moreover, for USS's argument to have logical valicity, a critical factual predicate had to be established, to-wit, that there was no safe and practical method of erecting the nets without undue danger to the net crews. The government presented testimony that the nets could have been erected without undue danger. The ALJ's opinion specifically mentions the view of Mr. Brickman, the OSHA compliance officer, who testified that safety nets could have been erected and suggested two methods USS could have used to erect them. (110a--12a, 374a). While we would be more at ease with an express finding on this point, our reading of the ALJ's opinion persuades us that he concluded that the dire risks claimed by USS would not, in fact, attend the installation of safety nets. Conceding that his opinion may not be a model of clarity, our review of it, as well as of the record as a whole, convinces us that the judge did consider and reject the greater hazard defense.[4] Albeit with some discomfort arising from the ambiguity of the opinion, we conclude that substantial evidence supports the rejection.
 
 
 17
 We find no merit in USS's other contentions. The government adequately responds to USS's claim that the safety net regulation was impermissibly vague:
 
 
 18
 Petitioner contends that 29 CFR 1926.750(b)(1)(ii) is invalid because it conflicts with 1926.105(a) and thereby deprived the company of adequate notice. But the (ALJ) and Commission affirmed the instant citation on the ground the company had not complied with the requirements of either standard. Therefore, regardless of the validity of 1926.750(b)(1)(ii) there is still a serious and adequately noticed violation of 1926.105(a) which this court should affirm. Second, even assuming such a conflict, 29 CFR 1910.5(c)(1) expressly provides that the more specific requirement prevails over the general. Since 1926.750(b) (1)(ii) falls within a subpart specifically directed to 'steel erection' it clearly prevails over 1926.105(a), which merely states general requirements for use of 'personal protective and life saving equipment'. See, e.g., MacEvoy v. U.S., 322 U.S. 102, 107 (64 S.Ct. 890, 88 L.Ed. 1163) (1944) . . ..
 
 
 19
 . . . The company's vagueness challenge is . . . irrelevant, since it not only fails to allege more than a 'facial' conflict between the two standards, but ignores the (ALJ's) express and amply supported finding that Baxter and Fink were well aware of these standards' requirements, the company demonstrated no harm from the alleged confusion, and 'not a single witness for (U.S. Steel) testified that he could not understand the regulations or their implications' (A. 380). Indeed, the company's division-wide safety supervisor testified that he had discussed these standards with the head of the OSHA construction standards division and was inter alia told that if safety belts were used, the company would be considered in compliance with 750(b)(1)(ii) (A. 358). . . .
 
 
 20
 Finally, we reject the contention that the citation should have been vacated on 'reasonable promptness' grounds because it issued six days rather than 72 hours after the decision to issue was reached. See Brennan v. Chicago Bridge and Iron Co., 514 F.2d 1082 (7th Cir. 1975).
 
 
 21
 We have carefully considered all other contentions presented by the petitioner and conclude that the petition for review will be denied.
 
 
 
 [1]
 On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet. The nets shall be hung with sufficient clearance to prevent contacts with the surface of structures below
 
 
 [2]
 Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical
 
 
 [3]
 See note 4, infra
 
 
 [4]
 Our conclusion in this regard obviates any necessity to consider the question whether the ALJ might properly have precluded the greater hazard defense as a matter of law because of USS's failure to resort to the available statutory variance procedure, 29 U.S.C. § 655(d). This question, vigorously pressed at oral argument, is raised at best obliquely by the briefs, coming into focus only in USS's Reply Brief. We express no opinion on the matter