575 F.2d 663
 6 O.S.H. Cas.(BNA) 1583, 1978 O.S.H.D. (CCH) P 22,739
BUILDERS STEEL COMPANY, Petitioner,
v.
Ray V. MARSHALL, Secretary of Labor, United States Department of Labor,
and
Occupational Safety and Health Review Commission, Respondents.
 No. 77-1589.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 15, 1978.
Decided May 17, 1978.
 
 Thomas M. Moore, Kansas City, Mo., for petitioner; Richard W. Miller, Kansas City, Mo., on brief.
 Diane E. Burkley, Atty., U. S. Dept. of Labor, Washington, D. C., for respondent; Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol., for Occupational Safety & Health, Allen H. Feldman, Acting Counsel for Appellate Litigation, Dennis K. Kade, Asst. Counsel for Appellate Litigation, Washington, D. C., on brief.
 Before HEANEY and STEPHENSON, Circuit Judges, and BECKER, Senior District Judge.*
 HEANEY, Circuit Judge.
 
 
 1
 Builders Steel Company seeks review of a decision of an administrative law judge which found Builders in violation of occupational safety regulation 29 C.F.R. § 1926.105(a).[1] The decision became the final order of the Occupational Safety and Health Review Commission (Commission) when no member directed its review within the statutory time period. 29 U.S.C. § 661(i); 29 C.F.R. § 2200.90(b)(3). Builders was assessed a penalty of $500.
 
 
 2
 The facts are largely undisputed. On September 23, 1976, Builders was constructing a warehouse for the Sony Corporation in Kansas City, Missouri. The warehouse was a single-story steel structure consisting of numerous forty-foot by forty-foot bays. Each bay consisted of four vertical columns, one at each corner; two horizontal trusses running east and west that were bolted to the top of two columns; and two horizontal perimeter bar joists running north and south that were bolted at each end to a truss. Seven intermediate bar joists ran parallel to the perimeter bar joists. They were spaced about five feet apart and bolted at each end to a truss. Three lines of bridging welded to the top and bottom of each bar joist served to stabilize the joists. The bridging ran perpendicular to the joists, approximately ten feet apart. The roof took on a grid-like appearance when completed.
 
 
 3
 While the work was in progress, OSHA compliance officer, John Tulipana, arrived at the work site. After conferring with the foreman, Tulipana inspected the premises. During the inspection, Tulipana watched two teams of men welding the bridging to the bar joists. The men walked, crawled and sat on the bar joists when making their welds. A welder took only five to ten seconds to complete his work at one point, and a two-man team could complete the welding of an entire bay in about fifteen to twenty minutes. The men were welding at a height of twenty-nine feet seven and one-half inches. Tulipana observed that no safety devices providing fall protection were in use during the welding operations. Builders did not require such devices.
 
 
 4
 Builders was cited for a serious violation of § 1926.105(a) for not providing safety nets when workers were exposed to a fall of over twenty-five feet to a concrete floor below and assessed a penalty of $500. Builders contested the citation. Thereafter, the Secretary of Labor issued his complaint and on January 19, 1977, a hearing was held before an administrative law judge. The administrative law judge affirmed the citation and the $500 penalty. See 29 U.S.C. § 659(c).
 
 
 5
 Builders first argues that it was denied due process because the Secretary's complaint significantly changed the description of the violation in the citation. The citation states that Builders violated § 1926.105(a) when it failed to provide safety nets. The complaint, however, alleged that Builders violated the regulation by failing to provide safety nets, ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts.[2]
 
 
 6
 The administrative law judge found that Builders violated § 1926.105(a) because it failed to provide safety nets. Thus, the violation, as established, conformed to the original allegation in the citation. Given this circumstance, we fail to see how Builders was prejudiced by the additional allegations in the complaint. Moreover, the complaint was served two and one-half months prior to the hearing. This gave Builders adequate notice of the additional allegations so that it could present contrary evidence at the hearing. See Long Mfg. Co., N. C., Inc. v. O. S. & H. Review Com'n, 554 F.2d 903, 907-908 (8th Cir. 1977).
 
 
 7
 Builders' second and third arguments are more complex. It contends in its second argument that § 1926.105(a) is inapplicable to the warehouse project because a more specific steel erection standard applies, 29 C.F.R. § 1926.750(b)(2)(i).[3] Builders maintains that this specific steel erection standard preempts the general standard, see U. S. Steel v. Occupational S. and H. Review Com'n, 537 F.2d 780, 784 (3rd Cir. 1976), and that it was in full compliance with the specific standard as its employees were working at a height less than thirty feet with a concrete floor below them.
 
 
 8
 The Secretary argues that § 1926.750(b)(2)(i) is inapplicable to the warehouse because it is not a "tiered" building. He contends that the Commission has consistently interpreted § 1926.750(b)(2)(i) "to include only those buildings which have a number of floors(.)" Daniel Construction Co., OSHRC Docket Nos. 7734, 7672 (Feb. 10, 1977), 1976-77 CCH OSHD P 21,521 at 25,824. See McKee-Wellman Power Gas, OSHRC Docket No. 12618 (June 23, 1977), 1977-78 CCH OSHD P 21,972.
 
 
 9
 Builders' third argument is closely related to its second argument. It maintains that § 1926.105(a) cannot reasonably be applied to a single-story steel structure, such as the warehouse, because it was erected in an identical manner with the first tier of steel in a multi-story building. Consequently, § 1926.750(b)(2)(i) should apply since employees are subjected to identical dangers in either structure.
 
 
 10
 The Secretary concedes that Builders' argument may have some merit and does not attempt to refute Builders' contention that the risks are identical in both buildings. He argues, instead, that the Commission's limitation of § 1926.750(b)(2)(i) to "tiered" buildings should control in any event otherwise employee protection would be withdrawn and employees subjected to a fall of thirty feet rather than twenty-five feet. He makes no attempt to distinguish a thirty-foot fall from a single-story building and a thirty-foot fall from the first tier of a multi-story building. He also concedes that the erection of the structural steel at the warehouse was identical with the erection of the first tier of steel in a multi-story building.
 
 
 11
 The administrative law judge agreed with the Secretary's assessment. With respect to Builders' second argument, he held that § 1926.105(a) was the applicable standard rather than § 1926.750(b)(2)(i). He did so on the basis of his reading of the comments accompanying the revision of § 1926.750(b)(2)(i),[4] the Secretary's explanation of the revision in the Federal Register,[5] and the Daniel and McKee-Wellman cases. See also Havens Steel Co., OSHRC Docket No. 13463 (Jan. 29, 1976), 1975-76 CCH OSHD P 20,467. The problem of the single-story building is not directly addressed in these documents. The focus of these documents is justifying the increase of a potential fall from twenty-five to thirty feet. The Secretary stated that the thirty-foot requirement "allow(ed) for current designs in steel construction which involve the use of a greater depth of structural beam members, and was intended to be applicable to the specific working conditions involved in skeleton steel erection." 39 Fed.Reg. 24,361 (1974). He maintained that "the adopted standard, while taking account of current designs in steel construction, continues to provide adequate protection to the employees engaged in such work." Id. at 24,361.
 
 
 12
 With respect to Builders' third argument, the administrative law judge refused to consider the inconsistency between the two regulations as an element in their application stating:
 
 
 13
 Notwithstanding the inconsistencies in the present falling protection standards (perceptively documented in Respondent's brief which pointed out that the tasks performed on the Sony project and on the first tier of a multi-tiered building would be identical), we nevertheless enforce the standards according to their terms.
 
 
 14
 The Occupational Safety and Health Act, 29 U.S.C. § 651 et seq., grants the Secretary power to make regulations consistent with its broad purpose which is "to assure so far as possible every working man and woman in the nation safe and healthful working conditions and to preserve our human resources." Arkansas-Best Freight v. Occupational Safety, etc., 529 F.2d 649, 653 (8th Cir. 1976). Regulations promulgated by the Secretary are ordinarily sustained because the Act is a remedial one and should be construed broadly. Moreover, common sense tells us that serious injuries can result from falls of thirty feet. Thus, we would have little difficulty accepting the Secretary's interpretation of the regulations but for the issues raised in Builders' third argument.
 
 
 15
 In this case, the two regulations as applied are inconsistent and contain language that is, at best, ambiguous. As a result, we must look at the regulations in a somewhat more critical manner. In this regard, an agency's interpretation of its regulation is given significant weight provided it is a reasonable one. Clarkson Const. Co. v. Occ. Saf. & Health Review, 531 F.2d 451, 457 (10th Cir. 1976); Budd Co. v. Occupational Safety & Health Rev. Com'n, 513 F.2d 201, 204-205 (3rd Cir. 1975). In order to determine the reasonableness of an interpretation in a particularized situation, however, this Court must be presented with an adequate factual record. See United Parcel Service of Ohio v. O. S. & H. R. C., 570 F.2d 806 (8th Cir. 1978).
 
 
 16
 Given the identical nature of construction techniques in the warehouse and the first tier of a multi-story building, the Secretary cannot merely acknowledge this identity and then state in conclusory terms that the warehouse is not a tiered building. He must lay an adequate factual foundation for this determination otherwise this Court cannot perform its function of reviewing its reasonableness. After carefully examining the administrative records[6] and the record developed in the proceeding before the administrative law judge, we conclude that the Secretary has not laid an adequate factual foundation.
 
 
 17
 The record is barren of reasons for differentiating between single-story structures, such as the warehouse, and multi-story structures for purposes of § 1926.750(b)(2)(i). There is no evidence that a thirty-foot fall from a one-story building is more severe than a thirty-foot fall from the first tier of a multi-story building. There is no statistical evidence that the risks of falling from a multi-story building are significantly less than from a single-story building. The Secretary cannot argue that a difference in structural design justifies its decision because he has conceded that identical construction methods were utilized in building the warehouse as in building a multi-story building. Thus, prior OSHRC decisions interpreting § 1926.750(b) (2)(i) are distinguishable insofar as the construction methods utilized in those buildings were significantly different than the construction methods in a "tiered" building. See McKee-Wellman Power Gas, supra (horizontal cross beams not regularly spaced); Daniel Construction Co., supra (open bay or loft-type of construction). In short, the Secretary has submitted no evidence that the safety considerations are different in the two types of structures.
 
 
 18
 Moreover, the Secretary has not demonstrated that the regulation would have a proportionately greater financial impact on a multi-story construction project than on a single-story construction project. See United Parcel Service of Ohio v. O. S. & H. R. C., supra at 812; Arkansas-Best Freight v. Occupational Safety, etc., supra at 654. Neither has the Secretary attempted to rebut Builders' evidence that standard industry practice did not require fall protection on buildings less than thirty feet with evidence that he has consistently enforced a twenty-five-foot requirement on single-story buildings.
 
 
 19
 In view of the record at this state, we cannot determine the reasonableness of the regulation. We, therefore, remand the case to the Commission to permit the Secretary to complete the record.[7] See 29 U.S.C. § 660; cf. United Parcel Service of Ohio v. O. S. & H. R. C., supra at 812-813. This Court will retain jurisdiction pending review. If Builders is dissatisfied with the Commission's action on remand, it shall have ten days to file any objections with this Court. In that event, an accelerated briefing schedule shall be arranged with the Clerk of this Court to review the Commission's action.
 
 
 20
 The order of the Commission is vacated and the cause remanded to the Commission for further proceedings consistent with this opinion.
 
 
 
 *
 The Honorable William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation
 
 
 [1]
 29 C.F.R. § 1926.105(a) provides:
 Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.
 
 
 [2]
 The complaint was consistent with the interpretation of § 1926.105(a) espoused by the Fifth Circuit in Brennan v. Southern Contractors Service, 492 F.2d 498 (5th Cir. 1974). Under this interpretation, an employer violates § 1926.105(a) if he fails to provide any of the enumerated devices in the regulation, not just safety nets. But see Crawford Steel Construction Co., OSHRC Docket No. 9622 (Dec. 7, 1976), 1976-77 CCH OSHD P 21,338 (concurring opinion); Warnel Corp., OSHRC Docket No. 4537 (Mar. 31, 1976), 1975-76 CCH OSHD P 20,576
 
 
 [3]
 29 C.F.R. § 1926.750(b)(2)(i) provides:
 Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed, except when gathering and stacking temporary floor planks on a lower floor, in preparation for transferring such planks for use on an upper floor. Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.
 
 
 [4]
 29 C.F.R. § 1926.750(b)(2)(i) was amended in July, 1974. Prior to amendment, § 1926.750(b)(2)(i) required that where skeleton steel erection was being done, a floor was required within two stories or twenty-five feet, whichever is less
 
 
 [5]
 The Secretary's explanation appears at 39 Fed.Reg. 24,360 (1974)
 
 
 [6]
 After oral argument, we issued an order requiring the Secretary to submit the administrative records made in connection with the adoption of 29 C.F.R. § 1926.105 and § 1926.750. These records include partial transcripts of proceedings before the Advisory Committee on Construction Safety and Health, notices of proposed and final rule making and public comments
 
 
 [7]
 In view of our disposition of the case, we need not address Builders' argument that the Secretary failed to sustain his burden in proving the feasibility and practicality of the measures mandated by § 1926.105(a)