William E. BROCK, Secretary of
Labor, Petitioner,

v.

WILLIAMS ENTERPRISES OF GEOR-GIA, INC., and Occupational Safety and Health Review Commission, Respondents.

No. 86–8825.

United States Court of Appeals,
Eleventh Circuit.

Nov. 19, 1987.

Laura V. Fargas, U.S. Dept. of Labor, Washington, D.C., for petitioner.

Ira J. Smotherman, Jr., Stokes, Shapiro, Fussell & Genberg, Atlanta, Ga., for respondents.

Before JOHNSON and CLARK, Circuit Judges, and EATON,* Senior District Judge.

JOHNSON, Circuit Judge:

The Secretary of Labor petitions for review of an order of the Occupational Safety and Health Review Commission ("Commission") vacating a citation imposed by the Secretary of Labor under 29 C.F.R. § 1926.105(a) against Williams Enterprises of Georgia, Inc. ("Williams"). We reverse the Commission.

I

Williams is a steel erection company engaged in the construction of a high rise office tower in Atlanta. During an inspection of the construction site, an Occupational Safety and Health Administration ("OSHA") compliance officer determined that the structure lacked adequate safety devices. Specifically, he found that Williams failed to provide safety nets to protect against exterior falls by its workers installing the steel beams for the fifth, sixth and seventh floors of the structure. Consequently, OSHA issued a citation to Williams alleging a "serious violation" [1] of Section 1926.105(a).[2] Williams contested the citation, but an Administrative Law Judge ("ALJ") affirmed the imposition of the citation. The Commission granted Williams' petition for review and reversed the ALJ's decision, thereby vacating the citation. In its opinion, the Commission decided that Section 1926.105(a) did not apply to Williams because Subpart R, 29 C.F.R. §§ 1926.750–52, provided the exclusive safety regulations for the steel erection industry. The Secretary then properly noticed this appeal from the Commission's decision under 29 U.S.C.A. § 660(b).

II

A

The central issue in this case is whether the regulations contained in Subpart R, which provide specific safety standards for the steel erection industry, preempt the safety regulations generally applicable to the entire construction industry. The Secretary maintains that, although the regulations in Subpart R preempt some of the safety regulations generally applicable to the construction industry, they do not preempt the application of Section 1926.-105(a) because they do not contain any provision relating to exterior falls from perimeter beams. The Commission, on the other hand, contends that Subpart R was intended to provide comprehensive regulations for the steel erection industry and that, because Subpart R lacks any provision addressing exterior falls from perimeter beams, Williams cannot be required to install exterior safety nets.[3]

■ Because the Secretary of Labor promulgates the regulations[4] under the Occupational Safety and Health Act of 1970, 29 U.S.C.A. §§ 651–78, his reasonable interpretation of those regulations is controlling, even though his interpretation

---

* Honorable Joe Eaton, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. A serious violation is defined as one of which the employer was aware, or reasonably should have been aware, and which creates a substantial probability of death or serious bodily injury. 29 U.S.C.A. § 666(k).

2. Section 1926.105(a) provides:
   Safety nets shall be provided when work places are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

3. The Commission formerly held that Subpart R did not preempt Section 1926.105(a) with re-

spect to exterior fall hazards in the steel erection industry. *See, e.g., Williams Enterprises, Inc.,* 11 O.S.H.Cas. (BNA) 1410 (Rev.Comm'n 1983), *aff'd sub nom. Donovan v. Williams Enterprises, Inc.,* 744 F.2d 170 (D.C.Cir.1984). However, the Commission reversed its position in 1984, and began applying the interpretation it asserts here. *See Adams Steel Erection, Inc.,* 11 O.S.H.Cas. (BNA) 2073 (Rev.Comm'n 1984), *rev'd sub nom. Donovan v. Adams Steel Erection, Inc.,* 766 F.2d 804 (3d Cir.1985). The Third Circuit labeled this reversal an "inexplicable departure from established policies" which constituted an abuse of discretion. 766 F.2d at 810.

4. The Secretary's authority to promulgate OSHA standards is contained in 29 U.S.C.A. § 655.

may not appear as reasonable as the Commission's interpretation. *Marshall v. Southwestern Industrial Contractors and Riggers, Inc.*, 576 F.2d 42, 44–45 (5th Cir. 1978); *Brennan v. Southern Contractors Service*, 492 F.2d 498, 501 (5th Cir.1974). Williams argues that the Commission's decision must be affirmed if it is supported by substantial evidence. *See, e.g., S & H Riggers & Erectors, Inc. v. OSHRC*, 659 F.2d 1273, 1276 (5th Cir. Unit B 1981). That standard, however, applies only to the Commission's findings of fact and not to its interpretations of the Secretary's regulations. *See H.B. Zachry Co. v. OSHRC*, 638 F.2d 812, 815 (5th Cir. Unit A Mar. 1981). *See also* 29 U.S.C.A. § 660. Thus, in deciding this issue, this Court must accord significant deference to the Secretary's interpretation if his interpretation is reasonable. *Everglades Sugar Refinery, Inc. v. Donovan*, 658 F.2d 1076, 1081 (5th Cir. Unit B 1981); *Southwestern Industrial*, 576 F.2d at 44–45; *Southern Contractors*, 492 F.2d at 501.

■ In the present case, the Secretary's interpretation is reasonable. It is also consistent with 29 C.F.R. § 1910.5(c), which explains how to apply the Secretary's standards. That section provides:

(c)(1) If a particular standard is specifically applicable to a condition, practice, means, method, operation or process, it shall prevail over any different general standard which might otherwise be applicable to the same condition, practice, means, method, operation or process....

(c)(2) On the other hand, any standard shall apply according to its terms to any employment and place of employment, in any industry, even though particular standards are also prescribed for that industry, as in Subpart B or Subpart R of this part, to the extent that none of such particular standards applies....  .

Courts have interpreted the expression "condition, practice, means, method, operation or process" as referring to the kind of hazard in question. *See, e.g., Donovan v. Daniel Marr & Son*, 763 F.2d 477, 481 n. 6 (1st Cir.1985). A general standard setting forth measures that an employer must take to protect employees from a particular hazard is not preempted by a specific standard unless that specific standard addresses the same particular hazard as the general standard. *L.R. Willson & Sons v. Donovan*, 685 F.2d 664, 670 (D.C.Cir.1982) ("*Willson I*"). The hazard at issue here is the risk of an exterior fall from perimeter beams. Thus, Subpart R could be found to preempt Section 1926.105(a) as applied to steel erectors only if some part of Subpart R specifically addresses the risk of exterior falls from perimeter beams.

■ The only regulations in Subpart R that might conceivably apply to exterior falls from perimeter beams are Sections 1926.750(b)(1)(ii) and (2)(i) [5] which provide:

(b)(1)(ii) On buildings or structures not adaptable to temporary floors, and where scaffolds are not used, safety nets shall be installed and maintained whenever the potential fall distance exceeds two stories or 25 feet....

(b)(2)(i) Where skeleton steel erection is being done, a tightly planked and substantial floor shall be maintained within two stories or 30 feet, whichever is less, below and directly under that portion of each tier of beams on which any work is being performed.... Where such a floor is not practicable, paragraph (b)(1)(ii) of this section applies.

Because these standards are not expressly limited to falls toward the interior part of a building, they might be read as requiring exterior safety nets as well. However, Section 1926.750(b) is satisfied if the structure has temporary floors, and temporary

---

**5.** Section 1926.750(b)(1)(iii) provides that a safety railing of wire rope shall be installed around the periphery of all temporary-planked floors of tier buildings. Although this regulation protects against exterior falls from temporary floors, it does not provide any protection against falls from perimeter beams or from newly built levels where temporary floors have not been con-structed. Thus, this section does not even arguably apply to exterior falls from perimeter beams above the temporary floors. By its own terms, this section fails to preempt Section 1926.105(a) because it does not address the danger with which Section 1926.105(a) is concerned. *Daniel Marr*, 763 F.2d at 483.

floors, unlike safety nets, do not provide any protection against exterior falls. Therefore, Section 1926.750(b) seems "specifically applicable" to interior falls only. Since Subpart R is not specifically applicable to exterior falls from perimeter beams, it does not preempt Section 1926.105(a). Therefore, Section 1926.105(a) applies to the steel erector industry.

Three circuits have embraced this interpretation of Section 1926.750(b) and have held that Section 1926.105(a) applies to the steel erector industry. *Brock v. L.R. Willson & Sons*, 773 F.2d 1377 (D.C.Cir.1985) (*"Willson III"*); *Donovan v. Adams Steel Erection, Inc.*, 766 F.2d 804 (3rd Cir.1985); *Daniel Marr*, 763 F.2d 477 (1st Cir.1985). No court has adopted a different interpretation.[6] *See Adams Steel*, 766 F.2d at 809. Furthermore, two circuits have held that Subpart R does not preempt 29 C.F.R. § 1926.28(a), which is the general construction industry regulation requiring the use of personal protective equipment. *L.R. Willson & Sons v. OSHRC*, 698 F.2d 507 (D.C.Cir.1983) (*"Willson II"*); *Bristol Steel & Iron Works v. OSHRC*, 601 F.2d 717 (4th Cir.1979). These cases lend further support to the idea that Subpart R does not provide comprehensive standards for the steel erection industry.

To refute this argument, Williams asserts that the Secretary's original intent in adopting Subpart R was to eliminate any protection for exterior falls from perimeter beams. However, there is no support for this argument in the promulgating language. In addition, such an intent would certainly be contrary to the Secretary's duty to "promulgate the standard which assures the greatest protection of the safety or health of the affected employees." 29 U.S.C.A. § 655(a). "It must be presumed that the Secretary acted in accordance with this statutory mandate and did not adopt Subpart R with the purpose of diminishing the level of security provided by the general fall protection standards." *Adams Steel*, 766 F.2d at 810. Furthermore, the Secretary's consistent history of enforcing Section 1926.105(a) against steel erection companies provides persuasive evidence that he did not intend Subpart R to preempt that section. *See Willson III*, 773 F.2d at 1382 & n. 6; *Adams Steel*, 766 F.2d at 810 & n. 5. Rather, the general fall safety standards supplement the steel industry standards in Subpart R. *Id.* at 810.

Williams also argues that the Secretary has espoused a contrary interpretation in other lawsuits and in recent proposed regulations. The only case which Williams alleges demonstrates the Secretary's contrary interpretation is *Brock v. Cardinal Indus.*, 828 F.2d 373 (6th Cir.1987), in which the Secretary argued that the general construction standards preempted the general industry standards. However, the Secretary's position in that case is not contradictory to his position here because that case did not involve an interpretation of 29 C.F.R. § 1926.105 and .750. The fact that the Secretary has developed exceptions to general industry standards in other contexts does not mean he did so here. This is especially true in the absence of any regulatory language announcing the exception.

Finally, Williams contends that the Secretary conceded in a Notice of Proposed Rule Making that Subpart R provides comprehensive safety regulations for the steel erection industry. Williams' argument is based on the fact that the Notice stated that the general construction industry fall standards, including Section 1926.105(a), would be incorporated into Subpart M, *see* 51 *Fed.Reg.* 42718, 42724 (1986), while the fall standards for the steel erection industry would remain in Subpart R. *Id.* at 42720. However, the Secretary actually stated that *"[a]dditional* requirements ... [for] fall protection for connectors and for workers on derrick and erection floors dur-

---

**6.** The only case Williams cites to the contrary is *Builder's Steel Co. v. Marshall*, 622 F.2d 367 (8th Cir.1980), which held that the 25–foot height requirement in Section 1926.105(a) was preempted by the 30–foot height requirement of Section 1926.750(b)(2)(i). However, that case concerned interior falls only, *see Builders Steel Co. v. Marshall*, 575 F.2d 663, 665 (8th Cir.1978) ("workers were exposed to a fall of over twenty-five feet to a concrete floor below"), rendering it inapposite to the inquiry whether Subpart R preempts the applicability of Section 1926.-105(a) to exterior falls. *See Adams Steel*, 766 F.2d at 809.

ing steel erection would remain in Subpart R." *Id.* (emphasis added). That statement evinces an understanding that Subpart R is not an exclusive set of safety standards for the steel erection industry.

### B.

Williams next argues that application of the Secretary's interpretation violates due process because Williams did not have fair notice of the requirements of Section 1926.-105(a). This argument encompasses two potential claims. The first contention is that Section 1926.105(a) fails to provide adequate notice because it is too vague, either on its face or in conjunction with Section 1926.750(b). The second contention is that Williams was deprived of adequate notice by the Secretary's failure to apply his interpretation of Section 1926.105(a) to the steel erection industry in the face of widespread industry non-compliance. We reject both of these claims.

■ Due process mandates that an employer receive notice of the requirements of any OSHA regulation before he is cited for an alleged violation. *S & H Riggers*, 659 F.2d at 1279. However, because Section 1926.105(a) neither imposes criminal penalties nor implicates the First Amendment, the vagueness challenge must be considered in the light of Section 1926.-105(a)'s application. *See B & B Insulation, Inc. v. OSHRC*, 583 F.2d 1364, 1368 (5th Cir.1978). In connection with this, "[t]he constitution does not require that employers be *actually* aware that the regulation is applicable to their conduct." *Willson III*, 773 F.2d at 1387 (quoting *Faultless Div., Bliss & Laughlin Indus. v. Secretary of Labor*, 674 F.2d 1177, 1185 (7th Cir.1982) (emphasis in original)). Under these standards, Williams had adequate notice because the Secretary's interpretation is a straightforward reading of Section 1926.105(a). Moreover, when Williams received the citation in 1979, the Commission was in agreement with the Secretary's interpretation and applied it consistently. *See, e.g., Williams Enterprises*, 11 O.S.H. Cas. (BNA) 1410 (Rev.Comm'n 1983), *aff'd sub nom. Donovan v. Williams Enterpris-*

*es, Inc.*, 744 F.2d 170 (D.C.Cir.1984). As other courts have concluded, Section 1925.-105(a) provides "clear notice" that exterior fall protection is required. *See, e.g., Willson III*, 773 F.2d at 1387.

Similarly, there is no merit to the suggestion that widespread industry non-compliance means that Williams did not have fair notice of the instant regulation. Courts have rejected the notion that an employer lacks notice of an OSHA regulation when the Secretary fails to prosecute violations of that regulation widely. *See, e.g., Willson III*, 773 F.2d at 1387–88; *Faultless*, 674 F.2d at 1187.

### C.

The next contention Williams raises is that, even if Section 1926.105(a) applies here, the Secretary has not proven a violation of that section. The Secretary bears the burden of proving every element of a violation. 29 C.F.R. § 2200.73; *B & B Insulation*, 583 F.2d at 1372. However, as the Commission indicated, the parties do not disagree over the safety measures Williams undertook (or failed to undertake) to protect the workers installing the steel beams for the fifth, sixth, and seventh floors. Williams installed a temporary floor at the fourth floor, and prohibited its workers from working more than two stories or 30 feet above the highest temporary floor. Thus, by the time the workers began installing the beams for the seventh floor, another temporary floor was installed at the sixth floor. Williams also required the bolt-up crews and plumb-up crews to use safety belts when they were stationary. However, they were not required to use any personal safety equipment when they were moving along the perimeter beams, and the connector crews who initially installed the beams did not use safety equipment at any time because they needed mobility in order to avoid swinging beams. In addition, Williams conceded that it did not install any exterior fall nets.

■ These facts establish a violation of Section 1926.105(a). The workers installing

the perimeter beams on the fifth, sixth and seventh floors faced an exterior fall in excess of 25 feet. To comply with the regulation, Williams either had to install exterior fall safety nets or had to require the use of one of the alternative safety devices listed in Section 1926.105(a). The only such alternative safety device possibly in use was safety belts. However, the connector crews did not use safety belts at all, and the plumb-up crews and the bolt-up crews did not use them when they traversed the perimeter beams. When safety belts are not used by workers during a substantial portion of the work day, safety belts are not "used" within the meaning of Section 1926.105(a). *Southwestern Industrial*, 576 F.2d at 44 (if workers disconnect safety belts to move, such belts are not in "use" at the construction site within meaning of Section 1926.105(a)); *Willson I*, 685 F.2d at 675 (accord). Because no alternative safety device was used to prevent exterior falls from perimeter beams, Williams' failure to install exterior safety nets violated Section 1926.105(a). *Southwestern Industrial*, 576 F.2d at 45; *Southern Contractors*, 492 F.2d at 501.

■ Williams attempts to avoid this result by asserting that its failure to install exterior safety nets did not violate Section 1926.105(a) because it installed temporary floors, which is an alternative safety device listed in that section. As support for this contention, Williams cites two cases which held that safety nets were not required when employees were working on temporary flooring or scaffolding. *Brennan v. OSHRC and Ron M. Fiegen, Inc.*, 513 F.2d 713 (8th Cir.1975); *Brennan v. OSHRC and Bounds*, 488 F.2d 337 (5th Cir.1973). However, *Fiegen* and *Bounds* are distinguishable from the case at bar because the employees here were not working on the temporary flooring. Rather, they worked on perimeter beams located one or two stories above the temporary flooring. Thus, the temporary flooring was not an alternative safety device protecting against exterior falls within the meaning of Section 1926.105(a), and *Southwestern Industrial* and *Willson I*, both of which concern exte-

rior falls from perimeter beams, provide more persuasive authority here.

■ In the present case, there is substantial evidence in the record from which only one conclusion can be drawn. Accordingly, the Secretary's citation must be reinstated.

### D.

Williams' final argument is that, if this Court determines that the Secretary established a violation of Section 1926.105(a), this case must be remanded to the Commission for consideration of Williams' affirmative defenses. At the hearing before the ALJ, Williams argued that installing safety nets would be impossible. In addition, it asserted that res judicata and collateral estoppel barred the Secretary from enforcing the OSHA standards because the issue of whether Section 1926.105(a) was applicable to steel erectors had been tried and lost by the Secretary in previous cases involving Williams. *See, e.g., Williams Enterprises of Georgia, Inc.*, 5 O.S.H.Cas. (BNA) 2050 (Rev.Comm'n 1977). Although the ALJ rejected all of these defenses, the Commission did not rule on any of them. Instead, its decision rested solely on the ground that Subpart R preempted Section 1926.105(a). Consequently, Williams contends that a remand is necessary so that the Commission can review the affirmative defenses. We disagree.

■ A remand is unnecessary because this Court can determine that Williams is not entitled to prevail on any of its defenses. *See Willson III*, 773 F.2d at 1389 n. 13. First, Williams failed to satisfy its burden of proof that the use of safety nets was impossible. *See id.* (Appellate court can reject affirmative defense of impossibility where there is no evidence in the record as to economic infeasibility of safety nets and there is unrebutted evidence that such netting was technologically feasible.). The Secretary presented expert testimony that the use of such nets was possible. Williams presented evidence showing only that exterior nets are not widely used. That such nets are uncommon does not demonstrate that their use is impossible,

**574**

especially in the light of the Secretary's evidence.

■ Second, this action is not barred on account of res judicata because it does not present the same facts or same cause of action as any previous citation issued by the Secretary against Williams. Thus, one of the prerequisites of res judicata is not satisfied. *Stevenson v. International Paper Co.*, 516 F.2d 103, 108 (5th Cir.1975).

■ In addition, collateral estoppel does not apply even though the Secretary may have failed to prevail on this legal issue in a previous proceeding against Williams. Collateral estoppel is a discretionary doctrine that has no application where there has been an intervening change in legal principles. *See Parnell v. Rapides Parish School Bd.*, 563 F.2d 180, 185 (5th Cir.1977), *cert. denied*, 438 U.S. 915, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978); Restatement (Second) of Judgments § 28(2)(b). After the ALJ decisions in Williams' favor in the mid–1970's, the Commission decided that Section 1926.105(a) applied to the steel erection industry, and then reversed that decision. However, as discussed above, three circuits have agreed with the Commission's earlier ruling. Taken in sum, this comprises a change in legal principles which renders the application of collateral estoppel inappropriate.[7]

### III

In conclusion, because the Secretary's interpretation of Section 1926.105(a) is reasonable, we REVERSE the Commission and hold that the Secretary has established a violation of that section. We direct the Commission to reinstate the citation of the Secretary. Remand to the Commission for consideration of Williams' affirmative de-

___

**7.** This case is not unlike *Commissioner v. Sunnen*, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1948), in which the Supreme Court held that collateral estoppel did not act to preclude the Internal Revenue Service from bringing an action against a taxpayer who had already prevailed against the Service in an earlier suit. The Court noted that, although a taxpayer may

fenses is unnecessary because we find these defenses to be without merit.

have prevailed on a legal issue in a previous year, a change in the controlling legal principles could render that determination obsolete. As the Court stated, collateral estoppel "is not meant to create vested rights in decisions that have become obsolete or erroneous with time, thereby causing inequities among taxpayers." *Id.* at 599, 68 S.Ct. at 720.