The FIRST NATIONAL BANK OF EDEN, a corporation, Plaintiff and Appellant,

v.

Neal W. PEARSON; Janet Pearson; Brewster Building Center, Inc., a corporation; and Marshall County, a political subdivision of the State of South Dakota, Defendants and Appellees.

The FIRST NATIONAL BANK OF EDEN, a corporation, Plaintiff and Appellant,

v.

Kermit M. PEARSON; Peggy L. Pearson; Brewster Building Center, Inc., a corporation; Alrox, Inc., a corporation, doing business as KGIM; and Marshall County, a political subdivision of the State of South Dakota, Defendants and Appellees.

Nos. 16832, 16833.

Supreme Court of South Dakota.

Considered on Briefs March 21, 1990.

Decided May 9, 1990.

Carlyle E. Richards, P.C., Aberdeen, for appellant.

Danny R. Smeins, Britton, for appellees, Neal W. Pearson and Janet M. Pearson (No. 16833) and Kermit M. Pearson and Peggy L. Pearson (No. 16832).

WUEST, Chief Justice.

First National Bank of Eden (Bank) appeals from a judgment of dismissal entered in favor of Neal and Kermit Pearson (Pearsons) who were debtors under certain loans granted by the bank. We reverse.

Neal and Kermit Pearson are brothers who farm in Marshall County, South Dakota. On October 15, 1980, each of them signed a promissory note in favor of the Bank for $300,000. These promissory notes were secured by two real estate mortgages which described real property owned by the Pearsons. As the amount of the loans exceeded the legal limit which the Bank was allowed to lend an individual borrower, the Bank requested the Farmers Home Administration (FmHA) to guarantee 90% of the loans. The FmHA complied with the Bank's request and on October 23, 1980, a "lender's agreement" and "loan note guarantee" were executed by the Bank and the FmHA. Shortly thereafter, the guaranteed portion of the loans ($540,-000) was sold by the Bank to the South Dakota Department of School and Public Lands.

In May of 1984, the loans became delinquent when the Pearsons failed to make the scheduled payment. As a result of this delinquency, the Department of School and Public Lands demanded that the Bank repurchase the guaranteed portion of the loans. The Bank, however, could not repurchase this portion of the loans since such a repurchase would violate the legal lending limits placed upon banks by our statutes. Consequently, Bank requested that the FmHA repurchase the guaranteed portion of the loans. In the summer of 1985, the FmHA honored the Bank's request and purchased the guaranteed portion of the loans from the Department of School and Public Lands.

In February of 1987, formal demands for payment and notice of acceleration of the balance of the loans were given to the Pearsons by the Bank. Since the Pearsons failed to comply with the demands of the Bank, a foreclosure action on the two real estate mortgages securing the loans was subsequently instituted by the Bank in November of 1987. In March of 1988, the circuit court presiding over this foreclosure action held that the FmHA was an indispensable party to this action and was required to be joined as an involuntary plaintiff pursuant to SDCL 15–6–19(a) and (b).[1]

---

1. SDCL 15–6–19(a) provides:

A person who is subject to service of process shall be joined as a party in the action if
(1) in his absence complete relief cannot be accorded among those already parties, or
(2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but

An order was subsequently entered which joined the FmHA in the foreclosure action. Thereafter, the FmHA removed the matter to the United States District Court for South Dakota and requested dismissal of the suit. The United States District Court dismissed the FmHA as a plaintiff in this action on the basis of sovereign immunity which the FmHA refused to waive. The United States District Court then remanded the proceeding to the circuit court noting:

The state court has previously held that the United States is an indispensable party in the instant action. The effect of this court's ruling is that the United States may not be involuntarily joined in the present case. Accordingly, the state court will have to decide if its previous ruling on indispensability bars the plaintiff from proceeding with its suit. If the United States is unsatisfied with this option, it, of course, remains free to consent to joinder.

On remand to the circuit court, the Bank submitted a motion for summary judgment arguing that the FmHA was not an indispensable party to the foreclosure action and that the loan documents clearly provided that the Bank was entitled to foreclose upon the full amount of the loans made to the Pearsons. The Pearsons then filed a motion to dismiss arguing that the FmHA owned 90% of the loans by virtue of its purchase from the Department of School and Public Lands. As a result, the Pearsons then reasoned that they should be considered FmHA "borrowers" under the Agricultural Credit Act of 1987, thus enti-

tling them to all of the rights and protections provided to borrowers of the FmHA under 7 U.S.C. § 1981(d) and § 2001.[2] Based upon this reasoning, the Pearsons argued that the portion of the Bank's complaint dealing with the 90% guarantee had to be dismissed pursuant to SDCL 15–6–19 because in the absence of the FmHA, they would not be afforded the rights and protections which they claim they were entitled to as borrowers of the FmHA. The Pearsons did admit however that they had no defense to the 10% of the loan which was held by the Bank.

Having heard arguments regarding these matters, the circuit court subsequently granted the Pearsons' motion to dismiss as to that portion of the Bank's complaint dealing with the 90% of the guaranteed loans. The circuit court then partially granted the Bank's motion for summary judgment by holding that the Bank was entitled to 10% of the indebtedness and collateral under the two loans in question. The circuit court essentially reasoned that under these circumstances, the FmHA was a surety, and not a guarantor and when it purchased the guaranteed portion of the loans, it became the owner of that portion. Therefore, according to the circuit court, the Pearsons were directly indebted to the FmHA after such purchase and not to the Bank as to 90% of the loans. From this, the circuit court concluded the Pearsons were entitled to all of the rights and protections provided to FmHA "borrowers" under the Agricultural Credit Act of 1987.

refused to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

SDCL 15–6–19(b) provides:

If a person as described in subdivisions (1) and (2) of § 15–6–19(a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping

of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

2. The rights or protections afforded by 7 U.S.C. § 1981(d) and § 2001 are generally:

1.) Written notice to the borrower that the loan may be suitable for restructuring;

2.) If the potential cost of restructuring is less than or equal to the potential cost of foreclosure, FmHA is required to restructure;

3.) FmHA may not foreclose or continue to foreclose before they have completed consideration of the loans for restructuring.

As these rights and protections would not be provided to the Pearsons in the absence of FmHA, the circuit court concluded that the FmHA was an indispensable party to the foreclosure action, and that in equity and good conscience the foreclosure action had to be dismissed as to that portion of the loans held by the FmHA. Upon our review of the legal issues presented in this case, we hold that the Pearsons were not FmHA "borrowers" under the Agricultural Credit Act, and hence, they were not entitled to all of the rights and protections granted to FmHA "borrowers" under the Act. Considering this fact, we further hold that the dismissal of part of this foreclosure action was not justified under SDCL 15–6–19(b).

In addressing the issue of whether the Pearsons were "borrowers" of the FmHA under the Agricultural Credit Act of 1987, we first note there are essentially three different categories of Federal Farm Loans under this Act. First, there are "direct" loans in which the FmHA directly loans its own funds to eligible borrowers. Secondly, there are "insured" loans. For these types of loans, the Federal Financing Bank provides funds to borrowers by purchasing government certificates of beneficial ownership. The FmHA then performs all collection and servicing functions in connection with these insured loans. Although termed "insured," these loans are made directly by the FmHA to the farm borrower.

■ The third type of Federal Farm Loan is the "guaranteed" loan. Under this type of loan, the prospective borrower makes an application for a loan through a private lending institution. If the lending institution finds that the prospective borrower is not eligible for such a loan under that institution's standards, it may submit a request to the FmHA for a guarantee on the loan. If a guarantee is granted, the FmHA will cover up to 90% of the private lender's loss after foreclosure on the loan. In the case of an insured or direct loan, the debtor is clearly a "borrower" of the FmHA. On the other hand, a debtor under a guaranteed loan is clearly not a "borrow-

er" of the FmHA. The question which remains to be determined then is whether the FmHA's purchase of the guaranteed portion of the loan from the Department of School and Public Lands converts the loan debtor under a guaranteed loan into a "borrower" of the FmHA. Our analysis of this issue indicates that it does not.

In order to be entitled to the mandatory loan servicing options under the Agricultural Credit Act of 1987, the Pearsons must be FmHA "borrowers" as that term is defined by 7 U.S.C. § 1991(b)(1). Under this statute, the term "borrower" is defined as "... any farm borrower who has outstanding obligations to the Secretary [of Agriculture] under any farmer program loan ..." According to this definition, it is questionable whether the Pearsons could be considered "borrowers" of the FmHA because the Pearsons' obligation to repay the loans runs both to the Bank and the FmHA. Under these circumstances then, we must look to other sources for guidance.

In 54 Fed.Reg. 1534, 1535 (Jan. 13, 1989), the Department of Agriculture was posed with the following question:

If the FmHA purchased the holder's portion of the [guaranteed] loan, does the borrower have an insured loan and would the guaranteed borrower then be eligible for the added servicing options that go along with an insured loan?

In response to this question, the Department of Agriculture stated:

If the FmHA purchases the guaranteed portion of a loan from a holder, the FmHA merely steps into the shoes of the holder. *The borrower is still a borrower of the lender unless the lender assigns its portion of the loan to the FmHA*, and only then would the borrower be entitled to the FmHA insured servicing options; otherwise, the guaranteed borrower will continue to be serviced by the lender.

Thus, according to the Department of Agriculture's interpretation of the Agricultural Credit Act, when the FmHA purchases a guaranteed portion of a loan from a holder, the borrower does not become a borrower

of the FmHA. Instead, the borrower remains a borrower of the lender, unless the lender assigns its portion of the loan to the FmHA. In analyzing this statement by the Department of Agriculture, we note that an interpretation of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong. *Broth. of Ry. & Airline v. Burlington Northern*, 671 F.2d 1085, 1088 (8th Cir.1982); *Red Lion Broadcasting v. Federal Communications Commission*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371, 384 (1969). Having reviewed the statutes relating to the Agricultural Credit Act of 1987, we are unable to find compelling indications that the Department of Agriculture's interpretation of the Agricultural Credit Act is wrong.[3]

In evaluating the above-noted comment of the Department of Agriculture, we first note that nowhere in the statutes relating to the Agricultural Credit Act is it provided that debtors under FmHA guaranteed loans become entitled to the rights and protections enunciated in 7 U.S.C. § 1981(d) and § 2001 once the FmHA purchases a guaranteed portion of a loan from a holder. In fact, the language of the statutes relating to this matter is somewhat unclear and ambiguous. One fact that is clear from the statutes, however, is that if the Secretary of Agriculture pays a claim under a guarantee issued to a holder by a lender, the Secretary is subrogated fully to the rights satisfied by such payment. See, 7 U.S.C. 1988(f). In other words, the Secretary is subrogated to the rights of a holder upon purchase of that holder's portion of the loan.[4] The holder in the present case (the Department of School and Public Lands) certainly would not have to provide to debtors, upon default, all of the rights and protections that the FmHA would have to provide under such circumstances to borrowers of direct or insured loans. Therefore, as the FmHA subrogates the rights of the holder upon purchase of that holder's portion of the loan, it clearly does not have to provide those rights and protections that it would otherwise have to provide to borrowers of insured or direct loans.

The rights and protections enunciated in 7 U.S.C. § 1981(d) and § 2001 are afforded only to "borrowers" of the FmHA. Since, under these circumstances, the FmHA does not have to provide these rights and protections to the debtors in this action, it follows that the debtors must not be FmHA "borrowers" as contemplated by the Agricultural Credit Act of 1987. These facts support the Department of Agriculture's conclusion that a debtor does not become a borrower of the FmHA merely because the FmHA purchases the guaranteed portion of a loan from a holder. As a result, we follow the Department of Agriculture's interpretation of the Agricultural Credit Act and hold that the Pearsons were not FmHA "borrowers" under this Act.

■ In light of our conclusion that the Pearsons were not "borrowers" of the FmHA, we must now determine whether the trial court erred in dismissing the part of this action dealing with the guaranteed portion of the loans in question. Initially, we note that we find no error in the trial court's determination that the FmHA was a "person to be joined if feasible" in an action under SDCL 15–6–19(a). The relevant portion of this statute provides that "a person who is subject to service of process shall be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest."

---

**3.** Pearsons argue that the statement of the Department of Agriculture is merely a comment and thus should not be given any deference by this Court. We disagree. In *Builders Steel Co. v. Marshall*, 575 F.2d 663, 666 (8th Cir.1978) the Eighth Circuit Court of Appeals indicated that courts could give deference to comments accompanying revisions of the Code of Federal Regulations, and also to a Secretary's explanation of such revisions in the Federal Register.

Therefore, we cannot conclude that the Secretary of Agriculture's comment noted in this opinion should not be given any deference by this Court.

**4.** This right of subrogation is also specifically set forth in the "lender's agreement" executed between the Bank and the FmHA.

Since the Bank is foreclosing on a portion of the loan which the FmHA holds as an assignee, the disposition of this action in the absence of the FmHA may, as a practical matter, impair or impede the FmHA's ability to protect its interest. Thus, the FmHA is a "person to be joined if feasible" under SDCL 15–16–19(a).

We now must direct our attention to SDCL 15–6–19(b). This statute provides: "If a person as described in subdivisions (1) and (2) of section 15–6–19(a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." In the present case, the trial court could not make the FmHA a party to this action because of the FmHA's claim of sovereign immunity and its refusal to waive this defense. Hence, the trial court was forced to determine whether the action was to proceed among the parties before it. According to SDCL 15–6–19(b), the factors to be considered by the trial court in making this determination include:

1.) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties;

2.) the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided;

3.) whether a judgment rendered in the persons absence would be adequate;

4.) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Upon review of these factors, it is clear the trial court erred in dismissing a portion of the foreclosure action due to the absence of the FmHA.

With respect to the first element, the trial court found that the absence of the FmHA in this action would not be prejudicial to the FmHA, but that it would be extremely prejudicial to the Pearsons since in the absence of the FmHA they would not be afforded the rights and protections provided to borrowers of the FmHA. We have determined, however, that the Pearsons were not borrowers of the FmHA and therefore they were not entitled to such protections and rights. Therefore, it is clear that the Pearsons would not be prejudiced by the absence of the FmHA in this action. In addition, since the absence of the FmHA does not prejudice the rights of any party in this action, the second factor noted above need not be considered since there is no prejudice which needs to be lessened or avoided.

The third factor to be considered in determining whether this action should have been dismissed due to the absence of the FmHA concerns whether a judgment rendered in the FmHA's absence would be adequate. With respect to this factor, the trial court found that the judgment of foreclosure would be adequate for the Bank and the FmHA, but it would be disastrous for the Pearsons who would lose their farms if they were not provided with the rights and protections offered to the borrowers of the FmHA. Again, we note that the Pearsons were not entitled to any of the rights and protections afforded to borrowers of the FmHA. Therefore, insofar as the Pearsons are concerned, a judgment rendered in the absence of the FmHA would essentially be no different than a judgment entered if the FmHA were a party to the action. As concerns the FmHA, the trial court was correct in determining that a judgment rendered in the absence of the FmHA would be adequate since the FmHA clearly would be entitled to a claim against the Bank after the foreclosure action for funds received by the Bank representing the FmHA's interest in the loan collateral. Finally, it is clear that a judgment rendered in the absence of the FmHA would be adequate insofar as the Bank is concerned. Thus, we must conclude that a judgment rendered in the FmHA's absence would be adequate for all parties in this case.

The final factor to be considered in this analysis is whether the Bank would have an adequate remedy if the action was dismissed for nonjoinder. Considering the fact that two separate real estate mortgag-

es covering two separate pieces of land constituted the collateral for the loans in question, a judgment allowing the Bank to foreclose on 10% of the loans is not an adequate remedy for the Bank. This remedy leaves considerable doubt as to which portion of the real estate the Bank may foreclose upon to satisfy its judgment. It also leaves considerable doubt as to how much property may be foreclosed upon by the Bank. Furthermore, the property may be more valuable as a whole, rather than split up into portions. Under these circumstances, we cannot conclude that the Bank's remedy as set forth by the trial court is adequate to protect the Bank's interests.

Based upon our review of the factors to be considered in determining whether the trial court should have dismissed the foreclosure action due to the absence to the FmHA, we hold the evidence clearly supports the conclusion that the trial court should have proceeded with this action even in the absence of the FmHA. Hence, the judgment of the circuit court is reversed and this case is remanded for further proceedings in accordance with this opinion.

All the Justices concur.

