# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1583

_____

| | | |
|---|---|---|
| Dakota Underground, Inc., | * | |
| | * | |
| Petitioner, | * | |
| | * | Appeal from the Occupational |
| v. | * | Safety and Health Review |
| | * | Commission. |
| Secretary of Labor, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: November 15, 1999
Filed: January 7, 2000

_____

Before WOLLMAN, Chief Judge, LAY, and BOWMAN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Dakota Underground, Inc. seeks review of the Occupational Safety and Health Review Commission's determination that Dakota violated the Occupation Safety and Health Act of 1970 ("OSHA"), 29 U.S.C. §§ 651-678 (1994), and its concomitant assessment of penalties. We affirm in part, reverse in part, and remand.

I.

Dakota is in the excavation business. In August 1997, a Dakota crew of four men, including Gary Rolstad, the foreman, were replacing a water main in Fargo, North

Dakota. On the 13th of that month, OSHA Compliance Officer Earle Lagro conducted an unscheduled inspection of the worksite. On Lagro's recommendation, the Secretary of Labor cited Dakota with four violations of OSHA regulations. Dakota objected to the citation, resulting in a hearing before an Administrative Law Judge. The ALJ affirmed three of the four violations and assessed penalties. Dakota sought discretionary review by the Occupational Safety and Health Review Commission, which was denied, making the ALJ's Decision and Order the final order of the Review Commission. See 29 U.S.C. § 661(j) (1994). Dakota then sought review in this Court. See id. § 660(a) (allowing direct review in Court of Appeals).

The three citations at issue in this appeal relate to the dangers of working in and around trenches. The "ladder violation" charged that at least one Dakota worker did not have a safe means of egress from the trench in which he was working. The "water violation" alleged that water had accumulated in one trench, and that Dakota failed to protect an employee adequately from the hazards associated with this water. The "trenching violations" charged that Dakota did not protect several workers from cave-in by adequate means such as shoring-up the trench with supports or sloping the walls of the trench. The ALJ classified all the violations as "willful." See 29 U.S.C. § 666 (1994) (categorizing violations as "willful or repeated," "serious," and "not serious"). In determining the penalties, the ALJ assessed $23,000 for the ladder violation, $40,000 for the water violation, and $70,000 for the trenching violations.

On appeal, Dakota challenges at least some aspect of each of the three violations. With regard to the ladder violation, Dakota disputes the characterization of the violation as "willful" and also appeals the penalty. Dakota questions whether the water violation occurred at all. Dakota does not disagree that the trenching violations occurred or that they were "willful," but it does seek a reduction in the penalty assessed. Finally, Dakota argues that the ladder, water, and trenching violations should have been "grouped," with only one penalty assessed.

II.

We begin with the ladder violation. In relevant part, the governing regulation requires that a "stairway, ladder, ramp or other safe means of egress shall be located in trench excavations [of a certain size] so as to require no more than 25 feet . . . of lateral travel for employees." 29 C.F.R. § 1926.651(c)(2) (1999). The ALJ found that a Dakota worker, Lawrence Moran, was working in a trench without access to a ladder or any other means of egress. Thus, he was exposed to "immediate" risk of "burial from collapsing trench walls." Decision & Order ("D&O") at 6.

Dakota argues that ladders were available to its employees at the Fargo worksite, that the ladders were moved periodically so that they would be close to employees as the employees worked, and that, at worst, Dakota negligently failed to move one ladder for a short period of time. Therefore, Dakota urges us to reverse the finding that the ladder violation was "willful." After hearing conflicting testimony, the ALJ rejected these arguments, and we affirm his conclusion.

The ALJ's finding of willfulness is conclusive if supported by substantial evidence on the record as a whole. See 29 U.S.C. § 660(a) (1994); Valdak Corp. v. OSHRC, 73 F.3d 1466, 1468 (8th Cir. 1996). While willfulness is not defined by statute, we affirm a finding of willfulness if there is substantial evidence that Dakota intentionally disregarded or was plainly indifferent to the requirements of the OSHA. See Valdak, 73 F.3d at 1468.

When OSHA Compliance Officer Lagro arrived on the scene, he saw that there was no ladder in the portion of the trench where Moran was working. Lagro returned to his vehicle for a video camera and his credentials. Later, as Lagro was thoroughly examining the site and taking video footage, one of the Dakota workers placed a ladder near Moran. Gary Rolstad, Dakota's foreman at the site and the "competent person" responsible for OSHA compliance, see 29 C.F.R. § 1926.650 (1999), could see Moran

during this time. The ALJ found that Lagro's testimony and the video footage "clearly refuted" Rolstad's testimony that a ladder was always placed within arm's reach of workers. D&O at 6.

The ALJ's determination that the ladder violation was willful is supported by substantial evidence. Dakota previously had been cited for multiple violations of OSHA trenching violations, several of them being willful. See D&O at 5. Past violations of similar, but not necessarily identical, regulatory provisions, "show [Dakota's] knowledge as to the requirements of the Act and Regulations and the exposure of its employees to serious injury or death resulting from a failure to comply." Western Waterproofing Co. v. Marshall, 576 F.2d 139, 145 (8th Cir.), cert. denied, 439 U.S. 965 (1978). Moreover, the fact that Moran worked without a ladder in clear view of Rolstad demonstrates that Dakota condoned or ignored this specific violation because the knowledge and actions (or inactions) of Rolstad, as the competent person responsible for OSHA compliance at the site, are attributable to Dakota. See Globe Contractors, Inc. v. Herman, 132 F.3d 367, 373 (7th Cir. 1997). These factors, combined if not alone, require that we affirm. See id. Even if Dakota's claim that it complied with the ladder regulation at other times was true, it would not negate the ALJ's finding of willfullness with respect to this violation. See Valdak, 73 F.3d at 1469 ("If an employer knowingly permits a serious hazard to exist, it has acted willfully even if the workplace is otherwise safe."). This is especially true where, as here, the ALJ pointed to evidence that Dakota generally fostered a working environment in which safety regulations were frequently ignored or even mocked. See D&O at 8.

Dakota waived its argument concerning the penalty assessed for the ladder violation because it did not raise the issue in its application to the Review Commission. See 29 U.S.C. § 660(a); General Carbon Co. v. OSHRC, 860 F.2d 479, 486 (D.C. Cir. 1988) ("[Section 660(a)] expressly forbids us to consider arguments not advanced to the Commission."). The statute excuses such "failure or neglect" only in "extraordinary circumstances." 29 U.S.C. § 660(a). Dakota points to no such circumstances here.

Dakota also objects to the citation for the water violation. The relevant regulation provides:

> Employees shall not work in excavations in which there is accumulated water, or in excavations in which water is accumulating, unless adequate precautions have been taken to protect employees against the hazards posed by water accumulation. The precautions necessary to protect employees adequately vary with each situation, but could include special support or shield systems to protect from cave-ins, water removal to control the level of accumulating water, or use of a safety harness and lifeline.

29 C.F.R. § 1926.651(h)(1) (1999).

In light of the regulation, the question for the ALJ was whether the precautions Dakota undertook were adequate to protect its workers from the hazards of working in the trench where water was accumulating or had accumulated. The regulation cautions that "adequacy" is a case-by-case determination, so "adequacy" must be judged in relation to the hazards of water accumulation in a particular situation. Therefore, a reasoned decision finding a violation of § 1926.651(h)(1) requires at least some description of the hazards present and some explanation why the employer's precautions were not adequate. See 5 U.S.C. § 557(c)(3)(A) (1994) (requiring formal adjudications to include "findings and conclusions, and the reasons or basis therefor, on all material issues of fact, law, or discretion presented in the record").

The ALJ made no findings about what the "hazards posed by water" were in this case, nor about whether Dakota's precautions were "adequate" to meet them. Instead, the ALJ stated only that "Dakota does not dispute the existence of the cited violation." D&O at 7. Dakota's brief to the ALJ and the transcript of the hearing, however, plainly

show that Dakota made no such concession.  See Closing Br. of Resp't at 9 ("Dakota was not in violation of § 1926.651(h)(1)."); Tr. of Hr'g at 48 (statement of counsel for Dakota) ("The evidence will show that the violation did not occur.").  The Secretary of Labor does not now argue to the contrary.

Given the decision's inadequacy, we cannot assess the correctness of the ALJ's apparent determination that a violation occurred, nor can we evaluate the ALJ's characterization of the violation as willful.  Accordingly, the ALJ's determination regarding the water violation cannot stand and we vacate that portion of the Decision and Order.  See Duane Smelser Roofing Co. v. Marshall, 617 F.2d 448, 449-50 (6th Cir. 1980) (vacating order for lack of adequate factual findings); cf. Builders Steel Co. v. Marshall, 575 F.2d 663, 667 (8th Cir. 1978) (vacating order because factual findings were inadequate to judge reasonableness of regulation).  We also vacate the associated penalty and remand the matter for further proceedings consistent with this opinion.  See Duane Smelser Roofing, 617 F.2d at 450; Builders Steel, 575 F.2d at 667; see also Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) (stating general rule of remand where agency action cannot be affirmed on the current record); Dickson v. Secretary of Defense, 68 F.3d 1396, 1407 (D.C. Cir. 1995) ("Because the [agency] only listed the facts and stated its conclusions, but did not connect them in any rational way, the [agency's] decisions are arbitrary and capricious.  Where an agency has failed . . . to explain the path it has taken, we have no choice but to remand for a reasoned explanation." (citation and footnote omitted)).

IV.

We turn next to the trenching violations.  The regulation in question commands that "[e]ach employee in an excavation shall be protected from cave-ins by an adequate protective system." 29 C.F.R. § 1926.652(a) (1999).  For instance, sufficiently sloped trench walls can protect against cave-in, see id. § 1926.652(b), as can timber supports, see id. § 1926.652(c)(1).  In this case, Dakota chose to use trench boxes to protect its

employees. These structures help prevent an employee from being swallowed up by a cave-in, see id. § 1926.650, but they offer no protection unless the employee is actually working inside the box.

The ALJ found that "at least two employees in three different locations were observed working in conditions that exposed them to immediate burial from collapsing trench walls." D&O at 6. Specifically, the ALJ found, "due to the employer's lax enforcement of safety rules . . . employees routinely left the protection of the trench boxes." Id. "The sudden collapse of the 8 to 10 foot trenches could bury an employee without warning; the probable outcome of a cave-in in a narrow, deep trench is death." D&O at 11. The Secretary chose to "group" these three trenching violations in its citation and the ALJ imposed the maximum penalty—$70,000—for the grouped violations, which he described as "egregious." Id.

We affirm an assessment of penalties under OSHA unless unwarranted in law or without justification in fact. See Valdak, 73 F.3d at 1470. Penalties for each willful violation may be between $5,000 and $70,000. See 29 U.S.C. § 666(a). The penalty to be assessed is to be determined giving regard to four factors: (1) the size of the business of the employer; (2) the gravity of the violation; (3) the good faith of the employer; and (4) the history of previous violations. See id. § 666(j).

The ALJ imposed the maximum penalty based on the second factor, gravity, and concluded that a reduction in amount for "size, history, or good faith" was not warranted. D&O at 11. "[T]he gravity of a particular violation may warrant the assessment of the maximum penalty, even though the employer may rate perfect marks on the other three criteria." Bush & Burchett, Inc. v. Reich, 117 F.3d 932, 940 (6th Cir.), cert. denied, __ U.S. __, 118 S.Ct. 46 (1997). Here, Dakota hardly has perfect marks. Rather, Dakota has a history of related OSHA violations and failure to comply with OSHA settlement agreements. See D&O at 5. Moreover, this violation was admittedly willful, which by definition is the absence of good faith. See United States

v. Ladish Malting Co., 135 F.3d 484, 491 (7th Cir. 1998) ("Efforts to make its workplace safe may show that an offense was not wilful; but if the deed was wilful, then there is no residual room for an appeal to 'good faith.'"). Dakota's size may not weigh in favor of the maximum penalty. But given the other factors, we do not hesitate to conclude that the ALJ was well within his discretion in assessing such a penalty.

V.

The Secretary's citation did not propose "grouping" the ladder, water, and trenching violations and the ALJ assessed penalties which, if combined, would exceed the statutory maximum for a single violation. Dakota argues that the violations should have been grouped by the ALJ, necessarily resulting in a lower penalty.

In its discretion, the Review Commission sometimes groups violations together and assesses a single penalty even when the Secretary proposes multiple penalties. See Pentecost Contracting Corp., 17 O.S.H. Cas. (BNA) 2133, 2135 (1997). The Review Commission has exercised this discretion in cases where the citations involve "similar violations that could be cured by a single act of abatement." Id. The Secretary urges that we review the decision not to group very deferentially, if at all. It is plain that the ladder and trenching violations each require different acts of abatement, such as proper placement of a ladder and proper use of a trench box. Therefore, we need say no more than that, under even the most exacting standard of review, we would find no error in the failure to group the ladder and trenching violations. Given the absence of findings by the ALJ concerning the water violation, we cannot evaluate the decision not to group it with the other violations. The issue may be raised on remand.

VI.

We affirm the final order of the Review Commission, as found in the Decision and Order of the ALJ, in all respects, except for the water violation and the associated penalty. We remand the matter for further consideration on those points.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.