**MANGANAS PAINTING COMPANY,**
**Petitioner,**

**v.**

**SECRETARY OF LABOR, Respondent.**

**No. 00–1497.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 9, 2001.

Decided Dec. 11, 2001.

---

Roger L. Sabo argued the cause and filed the briefs for petitioner.

1.  29 U.S.C. §§ 651–678 (1994 ed. & Supp. V

John Shortall, Attorney, United States Department of Labor, argued the cause for respondent.  With him on the brief were Joseph M. Woodward, Associate Solicitor, and Ann S. Rosenthal, Attorney.

Before: HENDERSON and TATEL, Circuit Judges, and SILBERMAN, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Manganas Painting Company appeals the Occupational Safety and Health Review Commission's decision that it violated the Occupational Safety and Health Act of 1970[1] by failing to adequately protect its employees against falls when preparing a bridge for repainting.  The Secretary of Labor reasonably interpreted her own regulations, and substantial evidence on the record as a whole supports the Commission's findings, and therefore, we affirm.

## I.

Manganas is a painting contractor that specializes in industrial commercial painting.  At its peak, the company employed approximately 35 employees.  In 1992, Manganas was the low bidder to the Ohio Department of Transportation to sandblast, repaint, and make certain structural repairs to the Jeremiah Morrow Bridge, a twin structure supported by structural steel girders spanning an approximate two hundred foot gorge which includes the Little Miami River.  The EPA and the Occupational Safety and Health Administration (OSHA) required Manganas to equip the bridge with a device to contain the lead-based paint being removed from the bridge and with protection (such as a safety net) for employees exposed to

(2000)).

the risk of falling. The Act and its implementing regulations set forth a comprehensive scheme of fall protection that applies in the absence of an industry-specific scheme—OSHA has not implemented regulations specific to the bridge painting industry, so the general fall protection regulations applied to Manganas' bridge project. In 1993, an OSHA Compliance Officer inspected the bridge, which Manganas was in the process of preparing for environmental containment and safety nets. At that time, the scaffold regulation provided as follows:

> Guardrails and toeboards shall be installed on all open sides and ends of platforms more than 10 feet above the ground or floor, except needle beam scaffolds and floats.... Scaffolds 4 to 10 feet in height having a minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails on open sides and ends of the platform.

29 C.F.R.1926.451(a)(4)(repealed). The safety net regulation provided:

> Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines or safety belts is impractical.

29 C.F.R.1926.105(a).

After multiple inspections, the OSHA CO issued Manganas several citations, three of which are on appeal.[2] First, the CO cited Manganas based on the employees' method of using safety belts, which they were using while rigging the bridge for safety nets. When they were working on the steel beams of the bridge, and were exposed to falls upwards of 150 feet, the employees would hook the metal safety hooks of their safety belts to the portholes of the steel flanges that were a part of the bridge deck structure: the metal hooks did not close completely. The employees also used this method of "tying off" their safety belts when ascending and descending 45 and 90 degree angle beams. Second, the CO faulted Manganas' use of "painters' picks," which are lightweight boards, approximately twenty inches wide and eight to twelve feet in length. The painters' picks extended from the handrail of a permanent catwalk running underneath the length of the highway spanning the bridge, and rested on a cable running horizontally along the outside of the bridge. Considering them to be scaffolds, the CO issued Manganas a citation because they did not have guardrails. Finally, the CO found that a Manganas employee, Stillwell, had failed to tie his safety belt off at all when he was in the process of securing the painters' picks to the horizontal cable running along the outside of the bridge.[3] The CO characterized the safety belt violation stemming from the open hooks as a "repeat" violation because Manganas had been cited previously for violating the same standard.

Manganas challenged the citations and an Administrative Law Judge held a three-day hearing, issuing a decision in 1996. The ALJ concluded that the painters' picks were scaffolds requiring guardrails; that

---

**2.** The CO issued several separate citations and an amended citation, but only three violations are on appeal.

**3.** Manganas argues that the CO essentially double-counted the same violation: that Stillwell worked on the painters' picks without guardrails and without tying off. In oral argument, counsel for the Commission clarified that the second citation for Stillwell's conduct was for his failure to tie off while putting the pick in place, a situation in which the guardrails would not have provided fall protection. Counsel for the Commission also clarified that the guardrails are a type of fall prevention, while safety belts arrest falls that have already occurred, and that they are not necessarily interchangeable forms of abatement.

Stillwell had failed to tie off when on the painters' picks; and that the safety belts, with open hooks, did not provide adequate fall protection. He rejected the Secretary's argument that the safety belt violation was a "repeat" violation. The Secretary petitioned the Commission for review, arguing that it was; Manganas also petitioned for review, arguing that the painters' picks were not governed by the scaffold regulation and disputing the ALJ's finding that the fall protection was inadequate. Four years later, the Commission affirmed the ALJ's finding of violations, but reversed his finding that the safety belt violation was not "repeat." Counsel explained that the delay was a result of the Commission's inability to find two commissioners who could agree on the outcome of the case.

## II.

■ Manganas argues primarily that the regulations in place in 1993, as opposed to more explicit subsequent regulations, did not adequately proscribe the cited conduct. Because the later regulations explicitly address the method of using safety belts, the company reasons, it could not be cited for inadequate fall protection if the problem stemmed from the method of use, rather than the type of protection. This argument is without merit. We defer to the Secretary's reasonable interpretation of her original regulation. In this case, the Secretary has interpreted the safety net regulation to require *effective* fall protection, an interpretation that certainly merits deference—indeed, it seems obvious. It certainly is not so unexpected as to violate Manganas' due process rights, as the company argued. Substantial evidence, including courtroom testimony and demonstrations, supports the Commission's finding that Manganas' method of tying off was effective only when the employees leaned back. In other words, the protection was not effective in many situa-

tions, and therefore Manganas failed to provide adequate fall protection.

■ Petitioner makes a similar argument with respect to the scaffold regulation violation. According to the company, the painters' picks are actually catenary scaffolds, which subsequent regulations address as a separate category. The company's argument fails for two reasons. First, the Secretary reasonably concluded that the painters' picks are not catenary scaffolds, which are defined as platforms between two horizontal cables—the painters' picks, by contrast, had one end resting on a permanent catwalk while the other rested on a horizontal cable. Second, even if the painters' picks were catenary scaffolds, the Secretary reasonably concluded that such scaffolds fell within the general scaffold regulation, which required guardrails. The appropriate question is not whether the regulations explicitly addressed the specific method of safety belt use or guardrails on catenary scaffolds; instead, the question is whether the Secretary's interpretation of the safety net and scaffolding regulations as proscribing the cited conduct was reasonable. It was.

■ The company also challenges the Commission's finding that it had constructive knowledge of the violations, arguing that the Commission imposed a constant supervision requirement on the company, contrary to its own precedent. The record does not support this argument. As to the safety belt violation that stemmed from the non-closing hooks, Manganas taught its employees to use that fall protection and cannot now argue that it was unaware that its employees were following directions. In addition, Manganas was clearly aware that its painters' picks lacked guardrails. As to Stillwell's failure to tie off his safety belt while on the painters' picks, his testimony made clear that Manganas was not cited for an isolat-

ed incident. Instead, Stillwell's practice was to walk across the painters' picks without tying off and to fasten the painters' picks to the cable without tying off. The record also makes clear that Stillwell was visible to his supervisor, and was, in fact, periodically aided by his supervisor when setting up the painters' picks. The Commission's finding that Manganas should have been aware, or was aware, is supported by substantial evidence.

██ Finally, Manganas disputes that the Secretary carried her burden of showing that the safety net violation was a "repeat" one. According to Manganas, it was not enough that the Secretary showed that Manganas twice violated the same standard while painting bridges. But the Commission has made it clear that the Secretary makes a *prima facie* showing that a violation is "repeat" if the prior and present violations are for failure to comply with the same standard. *See, e.g., Potlatch Corp.*, 7 O.S.H.C. 1061 (1979). The burden then shifts to the employer to demonstrate that the violations took place under disparate conditions and hazards associated with the separate violations, which Manganas did not do. The company argued only that the first violation was for a failure to provide any fall protection, the second for a failure to provide adequate fall protection. This argument does not show that Manganas did not commit a "repeat" violation of the safety net regulation.

Accordingly, the Commission's decision is affirmed.