# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2004　　　　Decided May 10, 2005

No. 04-1127

WAL-MART STORES, INC.,
PETITIONER

v.

SECRETARY OF LABOR,
RESPONDENT

———

On Petition for Review of an Order of the
Occupational Safety and Health Review Commission

———

*Ronald W. Taylor* argued the cause for petitioner. With him on the briefs was *Thomas H. Strong*.

*John Shortall*, Attorney, U.S. Department of Labor, argued the cause for respondent. With him on the brief were *Joseph M. Woodward*, Associate Solicitor, and *Charles F. James*, Attorney. *Ann S. Rosenthal*, Counsel, entered an appearance.

Before: GINSBURG, *Chief Judge*, and ROGERS and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: The Secretary of Labor cited Wal-Mart Stores, Inc. for obstructing a means of egress, in violation of a safety standard promulgated pursuant to the Occupational Safety and Health Act. The citation alleges that Wal-Mart had placed a portable conveyor rail system where it could have impeded employees from reaching an emergency exit. An Administrative Law Judge upheld the citation, and his decision became the final decision of the Occupational Safety and Health Review Commission when it declined Wal-Mart's petition for discretionary review. For the reasons stated below, we deny Wal-Mart's further petition for review.

## I. Background

In November 2002 an OSHA compliance officer, Gwendolyn Marino, inspected the Wal-Mart Supercenter in Hoover, Alabama based upon a complaint about dangerous conditions in the stockroom, which was used for receiving and storing goods. In the stockroom she found five parallel storage racks about 75 feet long with an aisle between every two racks. Along the rear wall of the stockroom, perpendicular to the racks and aisles, were three truck-bay doors that opened to an outside loading area; nearby in the sidewall was an emergency exit. Because three of the four aisles were blocked at one end by stacked boxes, only one aisle provided access to the emergency exit.

Marino also observed a "mobile conveyor rail system," which was "knee to mid-thigh" in height, extending from one of the truck-bay doors down the third aisle. Two employees were unloading boxes from the conveyor rail system, which lay between them and the emergency exit 20 feet away. Because the three aisles on their side of the conveyor rail system were blocked by stacked boxes, they could not have gotten to the

emergency exit without either surmounting or disassembling the conveyor rail system.

Based upon Marino's report the Secretary issued a citation to Wal-Mart for violation of 29 C.F.R. § 1910.37(k)(2) (2000), which then provided: "Means of egress shall be continuously maintained free of all obstructions or impediments to full instant use in the case of fire or other emergency." The citation characterized Wal-Mart's violation as "repeated," based upon an earlier citation concerning a Wal-Mart Supercenter in Georgia, and recommended a penalty of $25,000. Wal-Mart contested the citation and, accordingly, a hearing was held before an ALJ, who affirmed the violation and assessed a penalty of $5,000. *See Sec'y of Labor v. Wal-Mart Super Center* [sic], 20 O.S.H. Cas. (BNA) 1729, 2004 WL 334495 (2004).

The ALJ read § 1910.37(k)(2) as requiring a "continuous and unobstructed means of egress" and found the conveyor rail system to be "an obstruction to the means of egress." *Id*. at *4. The ALJ found the violation to be both "serious" – because in an emergency, "[w]here every second counts," an employee could be "seriously injured by any delay" getting through an obstructed egress, *id.* at *6 – and a "repeat violation," *id*. at *7-8. In the latter regard, the ALJ first rejected Wal-Mart's contention the citation was not for a repeat violation because the prior citation invoked by the Secretary involved a different store, and then held the present citation was "substantially similar" to the prior citation, which was for placing shopping carts in the "path of egress," in violation of the self-same § 1910.37(k)(2). *Id.* at *8. Turning to the penalty to be assessed, the ALJ rehearsed the four criteria in § 17(j) of the Act, 29 U.S.C. § 666(j) (size of business; gravity of violation; good faith of employer; and prior history of violations), and assessed a penalty of $5,000. *Id.* at *9-10.

Wal-Mart subsequently filed a petition for discretionary review with the Commission. When the Commission declined, Wal-Mart petitioned this court for review.

## II. Analysis

Wal-Mart presses three arguments in its petition for review: The ALJ erred in finding the conveyor rail system an "obstruction" within the meaning of § 1910.37(k)(2); the record does not support the ALJ's finding the violation was "serious"; nor should it be deemed a "repeat" violation.

Our standard of review is deferential. The Commission's findings of fact are conclusive if supported by substantial evidence. 29 U.S.C. § 660(a). Moreover, we defer to the Secretary's interpretation of the Act and of regulations enacted pursuant thereto so long as her interpretation is consistent with the statute and otherwise reasonable. *A.E. Staley Mfg. Co. v. Sec'y of Labor*, 295 F.3d 1341, 1345 (D.C. Cir. 2002).

A. Did Wal-Mart Violate the Standard?

Wal-Mart maintains the ALJ's holding that the conveyor rail system constituted an "obstruction" within the meaning of § 1910.37(k)(2) is "unsupported." The ALJ reasoned that

> [i]n an emergency situation, employees cannot be expected to unlatch the conveyor sections and push them apart, especially if there are boxes on the conveyor. Smoke could affect visibility, and employees could not see the latches. Employees could panic in an emergency and their first response might be to climb or jump over the system, which could result in injuries and time lost in reaching the exit. A distance of 20 feet to the exit, which is blocked by the

> conveyor rail system, is not insignificant as the employer contends since time is critical in an emergency.

*Wal-Mart Super Center*, 2004 WL 334495, at * 4. Wal-Mart challenges this analysis on two grounds. First, Wal-Mart argues § 1910.37(k)(2) cannot be read literally to prohibit every obstruction that might delay an employee in reaching an exit during an emergency because the standard does not prohibit every condition that might cause a delay; by its terms the standard recognizes both that an exit door, which takes time to open, may be part of a "means of egress," and that in an emergency employees may have to travel some distance – up to 400 feet in "a facility such as Wal-Mart's" – in order to reach an exit.

Because an exit door is itself a part of the "means of egress," *see* 29 C.F.R. § 1910.37(k)(2), however, it could not logically be considered an obstruction to a means of egress. Furthermore, although the standard does not require that each employee work immediately next to an emergency exit, that cannot mean, as Wal-Mart argues, an employer may obstruct a means of egress so long as the obstruction may be overcome by an employee who works near to it in less time than another employee, stationed farther away, could reach the exit in an emergency. That suggestion is wholly inconsistent with the clear command that "[m]eans of egress shall be continuously maintained free of all obstructions or impediments to full instant use." 29 C.F.R. § 1910.37(k)(2).

Second, Wal-Mart says it did not obstruct the employees' means of egress because they could have exited the stockroom through the truck-bay doors, which they could reach without either climbing over or disassembling the conveyor rail system. As the ALJ explained, however, "The truck bay doors are not a

'safe access to a public way' since employees would be required to jump 4 feet to the ground and could be injured jumping that far. 29 C.F.R. § 1910.37(h)(1)." *Wal-Mart Super Center*, 2004 WL 334495, at *5. Moreover, the truck-bay doors often were obstructed by trucks, and therefore were not "readily accessible at all times," 29 C.F.R. § 1910.37(f)(1) (2000), and could not be considered the "exits" contemplated by 29 C.F.R. §§ 1910.35(a)-(c) and 1910.37(a)-(f) (2000).

In sum, substantial evidence supports the ALJ's finding the conveyor rail system constituted an "obstruction" within the meaning of § 1910.37(k)(2) and Wal-Mart has not shown the ALJ's interpretation of that standard to be unreasonable.

B. Was the Violation Serious?

Next, Wal-Mart contends the ALJ erred in holding its violation was "serious" within the meaning of 29 U.S.C. § 666(k), which provides, clearly enough albeit inelegantly, that "a serious violation shall be deemed to exist in a place of employment if there is a substantial probability that death or serious physical harm could result from a condition which exists ... in such place of employment." Wal-Mart argues the ALJ erred by ignoring the "actual conditions" at the store, including "the [employees'] training, [and the] sprinkler system, fire extinguishers, other exits, and nearby fire department." Alternatively, Wal-Mart maintains that, because of the "very attenuated relationship between the existence of the violation and the health and safety of the employees, the Court may find the violation *de minimis*." *See* 29 § U.S.C. 658(a).

We have previously held that a violation of a standard is serious if it "could eventuate in serious physical harm upon other than a freakish or utterly implausible occurrence of

circumstances." *Brock v. L.R. Willson & Sons, Inc.*, 773 F.2d 1377, 1388 (1985). In holding Wal-Mart's violation was serious, the ALJ explained quite reasonably that in a fire or other emergency, "[w]here every second counts, employees could be seriously injured by any delay." *Wal-Mart Super Center*, 2004 WL 334495, at * 6. *Accord Sec'y of Labor v. Tree of Life, Inc.*, 19 O.S.H. Cas. (BNA) 1535, 2001 WL 1154451, at *2 (2001) ("Clearly, burns, smoke inhalation, and other potential injuries caused by delays in exiting the workplace during an emergency fall within the meaning of 'serious physical harm'").

Wal-Mart's complaint that the ALJ failed to consider the actual conditions at the store is beside the point. Wal-Mart does not gainsay the ALJ's reasoning that in an emergency "employees could panic and forget their training"; "the sprinkler system might not be activated quickly enough and might not dissipate the smoke"; and "the fire department could be delayed." *Wal-Mart Super Center*, 2004 WL 334495, at *6. Nor does it argue that any of these contingencies should be deemed "freakish or utterly implausible." Because the ALJ was free to consider any plausible circumstances that might "eventuate in serious physical harm," we have no cause to disturb his conclusion that the violation was "serious." *L.R. Willson & Sons*, 773 F.2d at 1388; *see also Cal. Stevedore & Ballast Co. v. OSHRC*, 517 F.2d 986, 988 (9th Cir. 1975) (seriousness turns upon probability of serious injury if accident occurs, not upon probability accident will occur). In any event, we agree with the Secretary that the factors to which Wal-Mart points, namely, the training of its employees, the presence of a sprinkler system, and the proximity of a fire department, are more properly considered (as they were) in assessing the "gravity" of the violation, and hence the appropriate fine, pursuant to 29 U.S.C. § 666(k).

We need not pause long over Wal-Mart's alternative argument that any violation of the standard was so attenuated in relation to the employees' safety and health as to be *de minimis*. As we have seen, Wal-Mart's violation cannot be said to have had "no direct or immediate relationship to safety or health," which is what the statute requires for a violation to be deemed *de minimis*. 29 U.S.C. § 658(a); *see also Conie Constr., Inc. v. Reich*, 73 F.3d 382, 385 (D.C. Cir. 1995) (even if Commission, rather than Secretary, has authority to determine whether violation is *de minimis*, determination is within its discretion).

C. Was it a Repeat Violation?

Wal-Mart makes two arguments that the ALJ erred in holding its violation to be a repeat: the present and the prior citations concerned substantially dissimilar conduct; and "the Secretary ... failed to show that the citation was issued to the same employer."[*]

The Secretary "makes a *prima facie* showing that a violation is 'repeat' if the prior and present violations are for failure to comply with the same standard," *Manganas Painting Co. v. Sec'y of Labor*, 273 F.3d 1131, 1135 (D.C. Cir. 2001), as

---

  * Wal-Mart also argued to the ALJ that the repeat designation is improper according to the *Field Inspection Reference Manual* used by OSHA compliance officers. The ALJ explained that the provision cited by Wal-Mart applies only when a "national inspection history has not been obtained"; Marino obtained such a history before issuing the present citation. *Wal-Mart Super Center*, 2004 WL 334495, at *9. Wal-Mart raised this issue anew in a single paragraph of its opening brief, the Secretary pointed to the ALJ's holding, and Wal-Mart seems by its silence in reply wisely to have abandoned the argument.

they are in this case. Wal-Mart therefore has the burden of "demonstrat[ing] that the two violations took place under disparate conditions and hazards." *Id.* Here, Wal-Mart argues the present citation concerns a blocked "way of exit access" whereas the prior citation concerned a blocked "exit"; as the two quoted terms refer to separate parts of a "means of egress," s*ee* 29 C.F.R. § 1910.35(a)(1) ("A means of egress ... consists of three separate and distinct parts: the way of exit access, the exit, and the way of exit discharge"), the citations are for creating different hazards. Whether the purported difference is meaningful we need not decide, for Wal-Mart does not show there was in fact a difference.

In support of its claim that the prior citation concerned a blocked exit, Wal-Mart points to the citation itself and to Marino's testimony. The citation charged that "[s]hopping carts were aligned against the walls adjacent to the emergency exit and found to be obstructing [the] path of egress." But "path of egress" is an ambiguous phrase that does not appear anywhere in the standard; it could refer to an "exit" but it could also, and indeed more naturally does, suggest either a "way of exit access" or a "way of exit discharge." Marino's testimony is also equivocal. Although she responded affirmatively when asked whether the previous citation "issued because ... the exits were actually being blocked by shopping carts," Marino also testified that she thought the "carts [were] in the aisleway." In fact, Marino did not see the violation in question; she was merely interpreting the citation. Wal-Mart's evidence, therefore, does not carry its burden of proving the two violations occurred "under disparate conditions and hazards." *Manganas Painting Co.*, 273 F.3d at 1135.

We are mindful a repeat violation should not be defined in such a way that an employer is disadvantaged merely for being

large. *See Caterpillar, Inc. v. Herman*, 154 F.3d 400, 403 (7th Cir. 1998) (observing need "[t]o distinguish between repeated violations that reflect simply the scale of a company's operations and those that indicate a failure to learn from experience"). Nevertheless, Wal-Mart, although large, has offered no reasonable basis for concluding that the prior citation should not have put it "on notice of the need to take steps to prevent the second violation." *Id.*

Turning to Wal-Mart's second argument, we conclude the Company has not shown the present and the prior citations were issued to different "employers." Concerned that Wal-Mart's proposal to treat the two Wal-Mart stores where the violations occurred as separate employers would "fragment[]" "compliance with [the Act]," *Wal-Mart Super Center*, 2004 WL 334495 at *8 (quoting *Sec'y of Labor v. Potlatch Corp.*, 7 O.S.H. Cas. (BNA) 1061, 1979 WL 61360 (1979)), the ALJ concluded that both stores were part of a single employer, namely, Wal-Mart Stores, Inc.

Wal-Mart's only argument for treating the two stores as different employers is that the two citations were mailed to, and identified the "employer" as, the Wal-Mart stores at which the violation in question took place. Both stores are, however, owned by the same corporation: Marino testified that the inspection report (OSHA Form 1A) for the store to which the prior citation was issued listed Wal-Mart Stores, Inc. as the "controlling corporation" and that the manager at the store to which the present citation was issued told her the store was owned by Wal-Mart Stores, Inc. *Wal-Mart Super Center*, 2004 WL 334495 at *8. Neither is, as far as the record shows, a separate legal entity with a juridical personality of its own. It follows from the statutory definition of "employer" that the same employer was charged in the present and the prior

11

citations. *See* 29 U.S.C. § 652(5) ("employer" is a "person engaged in a business affecting commerce"); *id.* at § 652(4) ("person" is "one or more individuals, partnerships, associations, corporations, business trusts, legal representatives, or any organized group of persons").

### III. Conclusion

For the foregoing reasons, Wal-Mart's petition for review is

*Denied.*