# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2647
_____

Wal-Mart Stores East, LP, doing business as
Walmart Distribution Center # 7035

*Petitioner*

v.

Alexander Acosta, Secretary of Labor

*Respondent*

_____

Petition for Review of an Order of the
Occupational Safety and Health Review Commission

_____

Submitted: September 26, 2018
Filed: March 28, 2019

_____

Before COLLOTON, BEAM, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

The Occupational Safety and Health Administration ("OSHA") cited Wal-Mart Stores East, L.P., doing business as WalMart Distribution Center #7035 ("Wal-Mart"), for two purported violations of OSHA's regulation relating to bloodborne pathogens, 29 C.F.R. § 1910.1030. More specifically, OSHA alleged Wal-Mart failed to comply with regulations pertaining to providing hepatitis B vaccinations to

employees who voluntarily served on a Serious Injury Response Team ("SIRT") at Wal-Mart's Alachua, Florida, distribution center (the "Alachua DC"). We deny Wal-Mart's petition and affirm the agency order.

## I. Background

OSHA's bloodborne pathogen regulation includes health standards related to the prevention of the transmission of hepatitis B in the workplace. *See* 29 C.F.R. § 1910.1030(f). The regulation directs employers such as Wal-Mart to, among other things, "make available the hepatitis B vaccine and vaccination series to all employees who have occupational exposure, and post-exposure evaluation and follow-up to all employees who have had an exposure incident." *Id.* § 1910.1030(f)(1)(i). "Occupational Exposure means reasonably anticipated skin, eye, mucous membrane, or parenteral contact with blood or other potentially infectious materials that may result from the performance of an employee's duties." *Id.* § 1910.1030(b).

The parties agree members of the SIRT team — employees who would volunteer as a secondary duty to respond to medical incidents and provide routine first-aid care unless and until emergency personnel (if necessary) arrived at the scene — were employees who had occupational exposure. As a result, Wal-Mart was required under the regulation to make the hepatitis B vaccine and vaccination series available to them. *Id.* § 1910(f)(1)(i).

The regulation generally required Wal-Mart to make the hepatitis B vaccine available to willing SIRT members after they were provided certain information related to hepatitis B, including the benefits of vaccination, but "within 10 working days of initial assignment." *Id.* § 1910.1030(f)(2)(i); *see also id.* § 1910(g)(2)(vii)(I). If an employee elected vaccination, the regulation further required Wal-Mart to ensure the hepatitis B vaccine and vaccination series was "[p]rovided according to

recommendations of the U.S. Public Health Service current at the time these evaluations and procedures take place, except as specified" by the terms of the regulation. *Id.* § 1910.1030(f)(1)(ii)(D).

As explained in OSHA's summary and explanation of the standard, the Centers for Disease Control and Prevention ("CDC") is the U.S. Public Health Service agency "responsible for issuing guidelines and making recommendations regarding . . . bloodborne pathogens." Occupational Exposure to Bloodborne Pathogens, 56 Fed. Reg. at 64004, at 64153 (Dec. 6, 1991). In 2006, the CDC's Advisory Committee on Immunization Practices issued a report providing guidance and recommendations to increase hepatitis B vaccinations for adults. *See* A Comprehensive Immunization Strategy to Eliminate Transmission of Hepatitis B Virus Infection in the United States, Recommendations of the Advisory Committee on Immunization Practices (ACIP) Part II: Immunization of Adults, 55 Morbidity and Mortality Weekly Report, No. RR-16 (Dec. 8, 2006), https://www.cdc.gov/mmwr/indrr_2006.html. The CDC recommends certain adults age twenty and older receive a three-shot vaccination series, with the second shot to be given within one to two months after the first shot and the third shot to be given four to six months after the first shot. *Id.* at 15.

After receiving complaints about the Alachua DC's safety program, OSHA conducted an inspection of the facility between late September 2015 and early January 2016. The inspector determined, through a review of documentation and interviews, that Wal-Mart violated § 1910.1030(f), and issued Wal-Mart two citations.

The first citation alleged a serious violation of § 1910.1030(f)(1)(ii)(D) ("Citation One") and proposed a fine of $5,000, asserting five SIRT members were "potentially exposed with an occupational exposure to bloodborne pathogens because the employer did not provide the [h]epatitis B vaccination series in accordance with the recommendations of the U.S. Public Health Service, exposing these employees

to contracting the [h]epatitis B virus." The second citation alleged a repeat violation of § 1910.1030(f)(2)(i) ("Citation Two") and proposed a fine of $25,000, asserting Wal-Mart did not offer eight employees the hepatitis B vaccine within ten working days of assignment to the SIRT team.

Wal-Mart timely contested the citation and notification of penalty, and a United States Department of Labor Administrative Law Judge ("ALJ") presided over a one-day hearing. Six witnesses testified, including an OSHA inspector, two members of the SIRT team, Wal-Mart's former and current Asset Protection Area Managers, and Wal-Mart's senior director of compliance and safety.

The ALJ issued a decision and order concluding the Secretary of Labor ("Secretary") had met his burden to establish Wal-Mart had committed both alleged violations of the regulation. The ALJ reclassified Citation One's violation as "other than serious" and reduced the penalty to $1,000. The ALJ imposed a penalty of $25,000 for Citation Two.

Wal-Mart petitioned for discretionary review with the Occupational Safety and Health Review Commission ("Commission"), and the Secretary filed a cross-petition. The Commission took no action on either petition making the ALJ decision the agency's final order. Wal-Mart filed a petition for review with this court and asks us to vacate both citations.

## II. Analysis

Wal-Mart advances a number of arguments in support of vacating the citations. In considering these arguments, we must uphold the ALJ's factual findings so long as they are "supported by substantial evidence on the record considered as a whole." 29 U.S.C. § 660(a); *accord Perez v. Loren Cook Co.*, 803 F.3d 935, 938 (8th Cir. 2015) (en banc); *Dakota Underground, Inc. v. Sec'y of Labor*, 200 F.3d 564, 566 (8th

Cir. 2000) (applying the substantial evidence standard to an ALJ's finding made after the Commission denied discretionary review). And we will uphold the ALJ's "legal conclusions 'unless they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Loren Cook*, 803 F.3d at 938 (quoting *Solis v. Summit Contractors, Inc.*, 558 F.3d 815, 823 (8th Cir. 2009)).

**A.**

Wal-Mart attacks the validity of both citations based on its assertion that OSHA's own enforcement procedures dictate OSHA should not have issued either citation because Wal-Mart fit within what it terms the collateral duty exemption. This "exemption" is set forth in OSHA Directive CPL 2-2.69, which provides Enforcement Procedures for the Occupational Exposure to Bloodborne Pathogens ("BBP Enforcement Procedures").

The BBP Enforcement Procedures were issued with the purpose of establishing policies and clarifications to ensure uniform inspection procedures. The policy provides that citations should be issued for employers who have not offered the hepatitis B vaccine to first aid providers (who have occupational exposure) before those workers are exposed to hepatitis B. An exemption is carved out for instances when the following three conditions are met:

a. The primary job assignment of such a designated first aid provider is not the rendering of first aid or other medical assistance, and

b. Any first aid rendered by such person is rendered **only as a collateral duty**, responding solely to injuries resulting from workplace incidents, generally at the location where the incident occurred. **NOTE:** This exception does **not** apply to designated first aid providers who render assistance on a regular basis, for example, at a first aid station, clinic, dispensary or other location where injured employees routinely go for assistance; nor does it apply to any healthcare, emergency, or public

safety personnel who are expected to render first aid in the course of their work. These employees must be offered the vaccine prior to exposure.

c. The employer's exposure control plan must specifically address the provision of the hepatitis B vaccine to all unvaccinated first aid providers who render assistance in any situation involving the presence of blood or OPIM (regardless of whether an actual "exposure incident" as defined by the standard occurred) and the provision of appropriate post-exposure evaluation, prophylaxis, and follow-up for those employees who experience an "exposure incident."

BBP Enforcement Procedures, at XIII.F.8.

Wal-Mart contends this exemption required OSHA to forgo issuing a citation (or at least classify the citations as de minimis) because Wal-Mart proved each of the listed conditions were true as to the relevant SIRT members. We disagree because substantial evidence supports the ALJ's finding that Wal-Mart failed to show the conditions in subparagraph b. of the BBP Enforcement Procedures were satisfied.

The ALJ reasoned the collateral duty exception did not apply here, in part because SIRT employees did not respond to workplace injuries "generally at the location where the incident occurred" as subparagraph b. requires.[1] In contrast, the

---

[1]The ALJ also reasoned the collateral duty exemption did not have the force and effect of law because the BBP Enforcement Procedures reflect a policy implemented by the Secretary as an exercise of his discretionary power. *Compare Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 538 (D.C. Cir. 1986) (Scalia, J.) (holding a Mine Safety Health Administration enforcement policy was not binding against the Secretary in part because it would interfere with the Secretary's enforcement discretion, which is "an area in which the courts have traditionally been most reluctant to interfere"), *with GoJet Airlines, LLC v. FAA*, 743 F.3d 1168, 1173 (8th Cir. 2014) (explaining the court would not apply a presumption of unreviewability in certain circumstances, including "if the agency has made clear its

ALJ found the "undisputed testimony established the great majority of the first aid administered by the SIRT team occurs in the SIRT Room" — a first-aid room separated from the main work area by a set of double doors.

From our review of the record, we conclude substantial evidence supports the ALJ's finding. "Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion." *Omaha Paper Stock Co. v. Sec'y of Labor*, 304 F.3d 779, 782 (8th Cir. 2002). This standard is met here. Two SIRT team members testified that when they received notification of a medical incident, they almost always responded by going to the SIRT room. Testimony and exhibits also established the SIRT room was labeled "FIRST AID ROOM," was separated from the warehouse by double doors, and was described as "the image of a modern-day clinic," in that it was well-stocked with medical supplies, a patient cot, and other things typically found in a clinical setting. Considering this evidence, we find no basis to disturb the ALJ's factual finding that SIRT employees did not respond to injuries "generally at the location where the incident occurred." The ALJ did not abuse its discretion in rejecting Wal-Mart's broad interpretation of the exemption.

**B.**

We next address Wal-Mart's contention that we should vacate Citation One, which charged Wal-Mart with violating the standard by failing to provide the hepatitis B vaccination series to SIRT members in accordance with the CDC's recommendations.

---

intent that a policy statement or set of enforcement guidelines impose binding limitations on the exercise of its enforcement discretion"). We need not decide today whether OSHA's inclusion of the collateral duty exemption in its BBP Enforcement Procedures could bind OSHA in the appropriate case because of our holding on alternative grounds.

The standard requires all employers to make sure the hepatitis B vaccine and vaccination series are "[p]rovided according to recommendations of the U.S. Public Health Service current at the time these evaluations and procedures take place, except as specified" in the regulation. 29 C.F.R. § 1910.1030(f)(1)(ii)(D). The CDC's recommendations set forth a timetable for completing the three-shot hepatitis B vaccination series with the third shot to be given four to six months after the first shot.

Because Wal-Mart did not provide four SIRT members with the third dose of the vaccine (at least until after the inspection), the ALJ held Wal-Mart violated the standard. We generally agree with the ALJ's assessment. The undisputed evidence shows Wal-Mart's supervisor of the SIRT team knowingly failed to provide four SIRT members the third dose of the vaccine until after the inspection. As a result, the lapse between the second and third doses for these employees ranged from twenty-one to twenty-four months, which far exceeded the range recommended by the CDC. Substantial evidence therefore supports the ALJ's determination that the hepatitis B vaccine and vaccination series was not "[p]rovided according to recommendations of the U.S. Public Health Service."

Wal-Mart makes several arguments as to why the ALJ's conclusion was wrong. Our authority to review this petition is generally limited, however, to those objections raised to the Commission. *See* 29 U.S.C. § 660(a) ("No objection that has not been urged before the Commission shall be considered by the court, unless the failure or neglect to urge such questions shall be excused because of extraordinary circumstances."); *Dakota Underground*, 200 F.3d at 567 (holding the petitioner "waived its argument . . . because it did not raise the issue in its application to the Review Commission" and the petitioner failed to identify extraordinary circumstances justifying such failure or neglect); *Frank Lill & Son, Inc. v. Sec'y of Labor*, 362 F.3d 840, 844 (D.C. Cir. 2004) (concluding challenges to an ALJ determination were waived and explaining that because of § 660's prohibition, circuit courts have

uniformly held there is no jurisdiction to entertain objections not raised in the petition for discretionary review to the Commission).

In its Petition for Discretionary Review directed to the Commission, Wal-Mart's only objection to the ALJ's interpretation of § 1910.1030(f)(1) was based on an assertion the ALJ's conclusion rests on a flawed interpretation of the regulation that improperly transformed the CDC's *recommendations* into mandatory *requirements*.[2] Because Wal-Mart has not identified any extraordinary circumstances giving us reason to excuse its failure to raise to the Commission its other arguments advanced to this court, we limit our consideration to this issue. *See Dakota Underground*, 200 F.3d at 567.

The central premise of Wal-Mart's argument properly before us is that the ALJ's interpretation of § 1910.1030(f)(1)(ii)(D) violates canons of statutory interpretation because it disregards and renders superfluous the word "recommendation" present in the CDC guidance document. *See*, *e.g.*, *United States v. Gomez-Hernandez*, 300 F.3d 974, 979 (8th Cir. 2002) (recognizing "the principle that courts avoid a statutory construction that would render another part of the same statute superfluous"). Wal-Mart also claims the Secretary's interpretation runs afoul of a "well-settled" rule that "the Secretary cannot make a recommendation enforceable simply by substituting the word *shall* for *should*."

---

[2]Wal-Mart also stated in a footnote to its argument before the Commission, "The ALJ's decision, requiring that employers follow recommendations of a different agency with no rule-making authority, may constitute an impermissible delegation of authority, in violation of the Administrative Procedures [sic] Act and due process." Wal-Mart included the same footnote in its briefing to this court. In neither document did Wal-Mart develop any argument or offer any authority to support this suggestion and so we decline to consider it. *See United States v. Zavala*, 427 F.3d 562, 564–65 & n.1 (8th Cir. 2005) (relying on Fed. R. App. P. 28 and holding an appellant abandoned an issue merely mentioned in briefing because he failed to offer any reasons or arguments in support of his argument).

Neither of these arguments are persuasive. While it is true the guidelines as issued by the CDC are voluntary and not enforceable by the CDC or the U.S. Public Health Service, they were incorporated into the BBP standard as mandatory requirements. The regulation expressly states "the employer shall ensure that all . . . vaccination series . . . are provided in accordance with [CDC] recommendations." 29 C.F.R. § 1910.1030(f)(1)(ii)(D). Contrary to Wal-Mart's contention, we are not aware of any authority or rule that would categorically forbid the Secretary from making it mandatory to follow recommendations.[3]

Wal-Mart cites authority involving 29 U.S.C. § 655(a) to argue for a limitation on OSHA's power in 29 U.S.C. § 655(b). The Commission and several circuits have recognized that standards adopted under section 6(a) of the Act — which permitted the Secretary for a limited time to adopt existing national consensus and established federal standards as OSHA standards without going through the formal rulemaking process — could not change an American National Standards Institute ("ANSI") recommendation into a mandatory requirement. *See, e.g.*, *Marshall v. Union Oil Co. of Cal.*, 616 F.2d 1113, 1115–16 (9th Cir. 1980)*; Marshall v. Pittsburgh-Des Moines Steel Co.*, 584 F.2d 638, 643–44 (3d Cir. 1978); *Usery v. Kennecott Copper Corp.*, 577 F.2d 1113, 1117–18 (10th Cir. 1977); *William B. Hopke, Co.*, 12 BNA OSHC 2158 (No. 81-206, 1986). These cases recognized, however, OSHA could enforce such a mandatory standard so long as the Secretary promulgated the regulation using the formal rule-making procedures set forth in section 6(b) of the Act. *See Kennecott*,

---

[3]This case does reveal some practical difficulties with incorporating recommendations and guidelines into a mandatory standard. For instance, Wal-Mart complains the recommended range in dosing schedules are vague and do not provide sufficient notice to employers as to what is required. Wal-Mart further plausibly argues there is reason to interpret CDC's timetable as providing minimum (as opposed to maximum) intervals between doses. Because Wal-Mart did not raise these objections in its petition to the Commission, however, these arguments are not properly before this court and we express no opinion as to their merits.

577 F.2d at 1118 ("In order for the Secretary to have rendered the standard enforceable with the change in language, he was obliged to observe the rulemaking procedures contained in the Act."). Here, since the Secretary promulgated § 1910.1030 under section 6(b) of the Act and thus went through the notice-and-comment rule-making procedure, the regulation's incorporation of the CDC recommendations does not implicate the same problems recognized in *Kennecott* and its progeny.

Based on the record and arguments properly before us, we conclude substantial evidence supports the ALJ's decision to uphold Citation One.

## C.

We next address Wal-Mart's challenges specific to Citation Two, which charged Wal-Mart with violating § 1910.1030(f)(2)(i) by failing to offer certain employees the hepatitis B vaccine within ten working days of assignment to the SIRT team. Wal-Mart challenges both the evidence supporting the ALJ's conclusion Wal-Mart violated the regulation and also the ALJ's classification of the violation as a "repeat" violation. Neither argument is meritorious.

The ALJ found the Secretary established Wal-Mart failed to make the hepatitis B vaccine available to certain SIRT volunteers within ten working days of assignment. The ALJ relied on two types of evidence to reach this conclusion. First, the ALJ relied on testimony from Wal-Mart's AP manager in charge of the SIRT team during the relevant time period, who conceded he failed to offer the vaccine to certain SIRT volunteers after they had completed their training. The ALJ also relied on documentary evidence suggesting members of the SIRT team were never offered immunization. This inference was created by comparing a roster of SIRT members with documentation maintained by Wal-Mart (as required by regulation, 29 C.F.R. § 1910.1030(h)(i) and (ii)), which showed who had either completed immunization

-11-

or declined immunization. If there was no such documentation from a known SIRT member showing either immunization or declination, the ALJ inferred Wal-Mart did not offer it to them.

Wal-Mart argues that by considering the lack of documentation, the ALJ in effect improperly shifted the burden of proof away from the Secretary to Wal-Mart. Instead of requiring the Secretary to meet its burden of proving Wal-Mart did not comply with the standard, Wal-Mart complains the ALJ required it to prove it did comply. We reject this argument because it fails to consider the testimony from Wal-Mart's AP manager, who testified that despite knowing SIRT members had to be offered the vaccination and that he was responsible for ensuring compliance, he "did not comply with those responsibilities." Combined with the gaps in documentation indicating multiple SIRT members were not offered vaccinations, we conclude substantial evidence supports the ALJ's finding that Wal-Mart violated § 1910.1030(f)(2)(i).

This leaves one final argument for us to consider — Wal-Mart's contention the ALJ erred by designating its violation of § 1910.1030(f)(2)(i) as a repeat violation. Congress provided that an "employer who . . . repeatedly violates the requirements of . . . any standard . . . promulgated pursuant to section 655 of this title, or regulations prescribed pursuant to this chapter may be assessed a civil penalty of not more than $70,000 for each violation, but not less than $5,000 for each willful violation." 29 U.S.C. § 666(a).

Both parties cite to a Commission case as setting the standard for proving a citation should be classified as "repeat." *See Potlatch Corp.*, 7 BNA OSHC 1061, 1063 (No. 16813, 1979). Under *Potlatch*, "the Secretary makes a *prima facie* showing that a violation is 'repeat' if the prior and present violations are for failure to comply with the same standard." *Manganas Painting Co. v. Sec'y of Labor*, 273 F.3d 1131, 1135 (D.C. Cir. 2001) (applying *Potlatch*). "The burden then shifts to the

-12-

employer to demonstrate that the violations took place under disparate conditions and hazards associated with the separate violations." *Id.*

The ALJ determined the violation was a repeat violation because Wal-Mart had entered into a Commission-approved stipulated settlement with the Secretary upholding a serious violation of § 1910.1030(f)(2)(i) in January 2012 at a store in Rochester, New York. The ALJ determined Wal-Mart failed to rebut the presumption these violations were substantially similar. We agree, even though the 2012 citation was for a violation at a Wal-Mart store, as opposed to a Wal-Mart distribution center. There is no allegation the store and the distribution center are owned by separate entities. *See Wal-Mart Stores, Inc. v. Sec'y of Labor*, 406 F.3d 731, 737 (D.C. Cir. 2005) (holding a repeat citation was warranted for a second violation of the same standard at a different store because they were owned by the same corporation). And Wal-Mart has failed to articulate through record evidence how the failure to offer the hepatitis B vaccine to the SIRT employees resulted in a different hazard than occurred from the failure to offer the vaccine to the retail store employees in 2012. Indeed, both classes of employees faced the same hazard — contraction of hepatitis B without vaccination — as a result of the violation. Accordingly, the repeat designation is affirmed.

### III.  Conclusion

For the foregoing reasons, we deny Wal-Mart's petition.

_____